551 So.2d 879 (1989)
Lillian Janice COSSITT and Joseph Q. White, Sr.
v.
NATIONWIDE MUTUAL INSURANCE COMPANY.
No. 07-58460.
Supreme Court of Mississippi.
June 21, 1989.
As Corrected on Denial of Petitions for Rehearing October 18, 1989.
Rehearing Denied October 18, 1989.
*880 Margaret P. Ellis, C.R. McRae, Pascagoula, Charles R. Wilbanks, Sr., Wilbanks Law Firm, Corinth, for appellants.
Thomas M. Murphree, Jr., David L. Ayers, Watkins & Eager, Robert M. Carpenter, McCoy, Wilkins, Noblin & Stephens, Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and SULLIVAN, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
This case arises from an automobile accident in which Lillian Janice Cossitt and Joseph Q. White, Sr. were seriously injured and one Odom McDaniel was killed. Nationwide Mutual Insurance Company (Nationwide) was the uninsured motorist carrier for a Morrison Heights Baptist Church bus in which they were traveling on a church trip. Nationwide interpled uninsured motorist coverage of twenty-five thousand dollars ($25,000) on the bus into the Chancery Court of Hinds County, Mississippi. Cossitt and White counterclaimed for seventy-five thousand dollars ($75,000) uninsured motorist coverage on three (3) buses owned and operated by the church, contending that the policies should be "stacked," and for punitive damages based on a "bad faith" refusal to pay the claim. Shelby Mutual Insurance Company (Shelby) *881 the workers' compensation insurance carrier for Morrison Heights Baptist Church, for whom Cossitt worked, intervened and sought to recover from Cossitt and Nationwide the amount of twenty-five thousand eight hundred seven dollars and ninety cents ($25,807.90), workers' benefits paid to Cossitt by Shelby.
The lower court denied all relief sought by Cossitt and White and divided the interpled sum of $25,000 between Cossitt, White and the Estate of Odom McDaniel. Shelby's claim for reimbursement of worker's benefits was granted, but attorney's fees in the sum of three thousand six hundred fifty-seven dollars seventy-two cents ($3,657.72) were paid to Cossitt and her attorney for collection of Cossitt's share in the interpled money.
Cossitt and White have appealed from the judgment entered by the lower court. Cossitt assigns fourteen (14) errors in the trial below, and White assigns six (6) errors.
The facts of the case are undisputed and were stipulated by the parties. On April 10, 1984, Odom McDaniel, Joseph Q. White, Sr., and Lillian Janice Cossitt (Activities Director of Morrison Heights Baptist Church) were traveling on a church-owned bus for an outing to Belzoni, MS. The bus came to a stop at a railroad crossing on Highway 49 East between Thornton, Mississippi, and Eden, Mississippi, because the highway was blocked at the railroad intersection. While the bus was stopped, McDaniel needed to answer a call of nature, and Cossitt and White departed the bus with him in order to assist in finding an appropriate restroom, either natural or constructed. While on the shoulder of the road, approximately four feet from the bus, Cossitt, White and McDaniel were struck by a truck driven by one Lester Davis. McDaniel was killed and Cossitt and White were injured.
At the time of the collision, Nationwide had in full force and effect an automobile insurance policy with Morrison Heights Baptist Church as the named insured and policyholder on the bus from which Cossitt, White and McDaniel alighted. Lester Davis, driver of the truck involved, had in effect at the time of the collision an automobile insurance policy with Southern Farm Bureau Insurance providing bodily injury liability limits of ten thousand dollars ($10,000) per person and twenty thousand dollars ($20,000) per occurrence. The amounts of the Davis policy limits in comparison to the damages inflicted upon the three passengers resulted in Davis being classified as an underinsured motorist.
On April 18, 1984, Nationwide's local agent in Clinton where Morrison Heights Baptist Church is located, notified Nationwide of the accident and the claims of the appellants and the Estate of McDaniel. On April 24, 1984, an adjuster from Nationwide, Jo Beth Glassco, interviewed the bus driver and learned that the three injured parties were outside the bus when the accident occurred. On April 26, 1984, Glassco took a statement from Cossitt, and on May 4, from Lester Davis, driver of the truck. She conducted a full investigation of the facts, and on June 7, 1984, wrote a letter to the injured parties denying all the uninsured motorist claims on the ground that the injured parties were not occuping the insured bus at the time the accident occurred. The pertinent part of the letter follows:
We have investigated the above captioned accident and the coverage under our insured's automobile policy. Under the automobile policy, underinsured motorist coverage provides coverage for only those persons occupying the automobile. Occupying means in, upon, getting in, on, out or off the automobile. Our investigation indicates that you were approximately four feet from the bus at the time of the accident. Therefore, you were not occupying the bus at the time of the accident. In view of these facts, there is no coverage under the underinsured motorist coverage of the automobile policy, and we must respectfully deny your claim. If you feel we are not in possession of all the facts, we will be happy to consider any information you wish to submit.
*882 White's attorney wrote Nationwide asking for a copy of the church's insurance policy on the bus and a copy of the declaration sheet. In July, Glassco responded by again denying the claim in much the same language set forth above.
On receiving notice of White's lawsuit, the entire claim file on the accident was transferred to Virgil Bowles, Regional Claims Attorney for Nationwide, in Memphis, Tennessee. After studying the file and the applicable law, on October 24, 1984, Bowles wrote to Attorney Tom Murphree, Jackson, Mississippi, asking, inter alia, whether Murphree thought the uninsured motorist provision of the Nationwide policy on the bus would apply to the accident in question, since the claimants were pedestrians and were not "occupying" or using the bus at the time of the accident. Bowles was aware that this Court in Stevens v. United States Fidelity & Guaranty, 345 So.2d 1041 (Miss. 1977), had held that a wrecker operator was "using" the wrecker while sweeping debris from the highway.
On November 13, 1984, Murphree wrote Bowles and indicated that he thought the Mississippi Supreme Court would hold that the use of the bus would be sufficient under the Stevens rationale to invoke the uninsured motorist provision of the policy. Murphree also inquired whether the church's policy insured more than one vehicle and, if so, whether there was a possibility of "stacking" the coverage. On January 15, 1985, Bowles wrote to Murphree agreeing that the Court would probably find coverage but contending that even though the church's policy covered three buses, coverage under a commercial policy could not be stacked.
In February, 1985, Bowles and Murphree made the decision to interplead the $25,000 coverage amount on the involved bus, and, on February 15, 1985, Bowles set forth Nationwide's position in a letter to the attorney representing the estate of Odom McDaniel.
On April 19, 1985, Nationwide filed in the Chancery Court of the First Judicial District of Hinds County a complaint for interpleader and declaratory judgment and tendered $25,000 into court. White, Cossitt and the Estate of McDaniel were all made parties. The Estate of McDaniel did not pursue a bad faith claim and has not appealed from the judgment of the lower court. Shelby sought to intervene in the suit pursuant to Mississippi Code Annotated § 71-3-71 (1972) to recover the sums it had paid in workers' compensation benefits to Cossitt. At the time of the suit, Shelby had paid $25,807.90 as benefits to Cossitt and has since paid additional sums.
The appellants moved to transfer the case to Circuit Court, which motions were denied, and subsequently they moved for a jury trial in chancery court, which was also denied. The case was tried on November 13-14, 1986, and on January 21, 1987, the chancellor issued his opinion. On March 2, 1987, there was a hearing before the chancellor to establish attorney's fees for Cossitt, and the chancellor issued a supplemental opinion. Those opinions may be examined as Appendix I and II.
On April 21, 1987, judgment was entered awarding to White, the Estate of McDaniel, and Shelby Mutual Insurance Company the sum of eight thousand three hundred thirty-three dollars thirty-three cents ($8,333.33) each, plus prejudgment interest at eight percent (8%), amounting to one thousand eight hundred fifty-five dollars ($1,855.00) each. Shelby Mutual was ordered to pay Jan Cossitt the sum of three thousand six hundred fifty-seven dollars seventy-two cents ($3,657.72) as her costs of recovery.

LAW
Cossitt assigns fourteen (14) errors in the trial below, and White assigns six (6) errors. The assignments of error will be consolidated for discussion under the following issues: (1) denial of right to jury trial; (2) the propriety of "stacking" the uninsured motorist coverage on all three buses covered by the church's business policy in order to compensate Class II insured persons; (3) the issue of whether Nationwide's conduct constitutes such "bad faith" as to amount to an independent tort for which punitive damages should have been *883 imposed; and (4) the question of whether the workers' compensation carrier was properly allowed to intervene and recover that portion of Cossitt's award up to the amount which it had already provided to Cossitt in workers' compensation benefits.

I.

Jury Trial
Appellants contend that the lower court should have transferred the case to circuit court in order to provide them with a jury trial in compliance with Miss. Const. Art. 3, § 31, which provides that "the right of trial by jury shall remain inviolate" and with Miss.R.Civ.P. 38 which provides that:
The right of trial by jury as declared by the Constitution or or any statute of the State of Mississippi shall be preserved to the parties inviolate.
Appellants claim that, at the least, the chancellor should have granted their motion for a jury in the chancery court. Appellant White cites Robertson v. Evans, 400 So.2d 1214 (Miss. 1981), in support of the argument. In Robertson, this Court, on an interlocutory appeal, directed a chancellor to transfer a tort action for damages to circuit court to preserve the right of trial by jury. 400 So.2d at 1215. The case sub judice differs from Robertson, which involved a tort claim historically tried by a jury. The interpleader action here brought by Nationwide is an action commonly tried in the chancery court. First National Bank of Vicksburg v. Middleton, 480 So.2d 1153, 1155 (Miss. 1985). In Middleton, this Court held that where a chancery court has properly taken jurisdiction on any one ground of equity, it can then properly "proceed in the one suit to complete adjudication and settlement of all disputed questions involved in the entire transaction." 480 So.2d at 1156. See also Penrod Drilling Co. v. Bounds, 433 So.2d 916 (Miss. 1983); Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 464 (Miss. 1983).
The facts of this case are not disputed, only the law applicable to those facts is questioned by the parties. If the appellant's claims had been tried before a jury, the same questions of law would have been decided by the judge, see Griffith, Mississippi Chancery Practice § 597 (2d ed. 1950), and, on this appeal, the law questions will be settled by this Court.
This is not a case of a party's fraudulently seeking the jurisdiction of one court to avoid jury trial, similar to a fraudulent joinder of parties for the purpose of fixing venue. The plaintiff, in good faith, interpled $25,000 coverage on the particular bus involved, and the chancellor, in good faith, received and proceeded with the jurisdiction of the case in his court. The case sub judice, likewise, is distinguished from Blackledge v. Scott, 530 So.2d 1363 (Miss. 1988) and McLean v. Green, 352 So.2d 1312 (Miss. 1977), which involved pure tort claims.
Issue I is affirmed.

II.

Stacking
The appellants contend that the lower court erred in not allowing stacking of three insurance policies issued to Morrison Heights Baptist Church on the bus involved in the accident here and two other buses owned by the church. The aggregate amount of uninsured motorist coverage on the three buses was seventy-five thousand dollars ($75,000). The appellants further contend that the lower court erred in holding that the appellants, as Class II insureds, are excluded from stacking the three insurance policies.
The pertinent policy language as to who was insured under the uninsured motorist endorsement is as follows:
1. You or any family member. ("You" is defined as the person or organization shown as the named insured in the declarations).
2. Anyone else occupying a covered auto or a temporary substitute for a covered auto.

The policy included the following limitation:
Regardless of the number of covered autos, insured's claims made or vehicles involved in the accident, the most we will *884 pay for all damages resulting from any one accident is the limit of UNINSURED MOTORISTS INSURANCE shown in the declarations.
Nationwide takes the position that stacking is not permitted here because (1) the injured persons were Class II insureds and that stacking is permitted only by Class I insureds, and (2) that stacking is not permissible in a fleet or commercial policy. The Court held in Brown v. Maryland Cas. Co., 521 So.2d 854 (Miss. 1987), that under a standard family or personal policy, Class II insureds may stack coverage. See also Wickline v. United States Fidelity & Guaranty Co., 530 So.2d 708 (Miss. 1988). Nationwide concedes that the appellants were Class II insureds who were covered under the policy even though they were not actually "occupying" the vehicle as the policy language appears to require.
We have not been cited to any Mississippi cases, nor have we found one, in which this Court has dealt with "stacking" in a business or commercial policy. Cases from other jurisdictions generally relate to those instances where an employee of a business is injured by an uninsured motorist while the employee is using, occupying or operating one of a large fleet of vehicles insured by the employer. See, e.g., Lambert v. Liberty Mut. Ins. Co., 331 So.2d 260 (Ala. 1976); Travelers Ins. Co. v. Pac, 337 So.2d 397, 399 (Fla. Dist. Ct. App. 1976); Linderer v. Royal Globe Ins. Co., 597 S.W.2d 656 (Mo. App. 1980). The usual rationale advanced by courts for denial of stacking of coverage within a commercial context is based on the amount of coverage which could reasonably be supported by the premium which has been paid. See Howell v. Harleysville Mut. Ins. Co., 305 Md. 435, 505 A.2d 109, 113 (1986).
In a case involving the question of whether or not uninsured motorist coverage on seven vehicles in a commercial policy could be stacked, the Minnesota Supreme Court reached a different result. That court, noting that there was no statute defining a commercial policy or distinguishing such a policy in any way, declined to accept the rationale of other jurisdictions that "to allow stacking would be to make premium costs prohibitively expensive and would not be within the reasonable expectations of the insurer and the employer-policyholder." In permitting stacking of coverage on seven vehicles, the Minnesota Court said:
We decline, however, to address a question that is not before us. We do not have here a large, commercial fleet policy. Assuming arguendo there is validity to the arguments about prohibitive costs and reasonable expectations, these arguments have no force here.
Yeager v. Auto-Owners Insurance Company, 335 N.W.2d 733, 739 (Minn. 1983).
In the case sub judice, Morrison Heights Baptist Church paid three separate premiums for uninsured motorist coverage on the three buses owned by it. The church was designated in the policy as the named insured, and the expectation of the church as to stacking coverage should not be any different from the expectation of the individual policyowner in Brown v. Maryland Casualty Co., supra. The church might reasonably be said to have an even greater expectation of stacking for Class II insureds in light of Nationwide's claim that there are no Class I insureds under the policy.
It is a matter of common knowledge that many individuals have from three to seven vehicles, or more, on one policy for family use. The policy is not considered to be a fleet policy. As in Yeager v. Auto-Owners Insurance Company, 335 N.W.2d 733 (Minn. 1983), we are not faced here with a large, commercial fleet policy. We are of the opinion that, under the facts of the present case, stacking of the aggregate coverage of $75,000 uninsured motorist coverage should be, and it is, allowed.

III.

Bad Faith
The appellants base their bad faith claims on (1) Nationwide's failure to provide them with a copy of the policy held by Morrison Heights Baptist Church and (2) the company counsel's knowledge that this *885 Court in Stevens v. U.S.F. & G., 345 So.2d 1041 (Miss. 1977), had held that the wrecker operator there, who was outside the vehicle sweeping glass, was "using" the vehicle so as to bring him within the policy language for coverage.
In May, 1984, appellant Cossitt requested from Clark Sullivan, the local Nationwide agent, a copy of the uninsured motorist endorsement on the Morrison Heights policy. Sullivan declined to give Cossitt a copy but allowed her to read the endorsement in his office. White's attorney requested a copy of the policy from the company in June, 1984. This request was sent to Glassco, the adjuster handling the claim. Glassco apparently did not send White the requested copy of the policy, but on July 17, 1984, wrote to White quoting the policy language on which the denial of the claim was based. The appellants claim that Nationwide's failure to provide them with copies of the church policy amounted to "hiding" coverage and should subject the company to punitive damages. Henderson v. U.S.F. & G., 620 F.2d 530 (5th Cir.1980), is cited in support of this contention. There, the evidence indicated that the insurer had "hidden" a vehicle liability policy in the face of the insured's request for a copy and that the insured had made a case for submission to the jury on the issue of punitive damages. In Henderson, the company refused to produce Henderson's own policy and denied the existence of coverage. In the case sub judice, the company neither denied the existence of the policy nor the terms of the policy in question. Even though the company could not explain why no copy of the policy had been provided as requested, the failure to so provide here, particularly in view of the fact that the provision of the policy was shown to one appellant and a letter was written stating and setting out the provision to the other appellant, does not rise to the level of such reckless disregard of the rights of the claimants as to constitute an independent tort.
The second major basis for the bad faith claim is that Nationwide's regional counsel knew, or should have known, of this Court's decision in Stevens v. U.S.F. & G., 345 So.2d 1041 (Miss. 1977), in which the wrecker operator was accorded coverage as a Class II insured when he was struck while outside the vehicle sweeping up debris. The appellants contend that Stevens was dispositive as to the issue of coverage for them while out of the bus. This Court in Stevens interpreted policy language which required the Class II insured to be "using" the vehicle and found that the sweeper's activity constituted use of the vehicle. The Stevens court made it clear, however, that whether or not a person was "using" the vehicle would depend on the particular facts and circumstances of the case.
In the case sub judice, the Class II insured was required to be "occupying" the vehicle in order to be covered. However, upon receiving its attorney's opinion, Nationwide conceded coverage. This Court, therefore, is not required to decide whether there was coverage, but we are of the opinion that Nationwide reasonably questioned whether or not, under the language of the policy, there was coverage when the appellants were not in the bus and not getting on or off. We are of the opinion that that the conduct of Nationwide in originally denying the claim does not "constitute the gross, wanton, or intentional conduct essential to the creation of an independent tort for which punitive damages will lie." Life and Cas. Ins. Co. of Tennessee v. Bristow, 529 So.2d 620 (Miss. 1988); Aetna Casualty v. Day, 487 So.2d 830 (Miss. 1986); State Farm Fire & Cas. Co. v. Simpson, 477 So.2d 242, 250 (Miss. 1985).
Issue III is affirmed.

IV.

Workers' Compensation
Appellant Cossitt, who was an employee of Morrison Heights Baptist Church, contends that Shelby Mutual Insurance Company, the church's workers' compensation carrier, had no right to uninsured motorist benefits provided by Nationwide on the church bus, and, therefore, had no right to intervene in the interpleader suit and *886 seek recovery from the uninsured motorist claim. Mississippi Code Annotated § 71-3-71 (1972) upon which Shelby based its intervention claim, provides in part:
An employer or compensation insurer who shall have paid compensation benefits under this chapter for the injury or death of the employee shall have the right to maintain an action at law against any other party responsible for such injury or death, in the name of such injured employee or his beneficiaries, or in the name of such employer or insurer, or any or all of them. If reasonable notice and opportunity to be represented in such action by counsel shall have been given to the compensation beneficiary, all claims of such compensation beneficiary shall be determined in such action, as well as the claim of the employer or insurer. If recovery shall be had against such other party, by suit or otherwise, the compensation beneficiary shall be entitled to any amount recovered over and above the amount that the employer and insurer shall have paid or are liable for in compensation or other benefits, after deducting the reasonable costs of collection.
Cossitt argues that § 71-3-71 giving the employer a right of recovery against "any other party responsible for such injuries or death" is limited to the third party tortfeasor and does not extend to give a right of recovery against the employer's uninsured motorist coverage carrier, and that Nationwide did not take the place of Davis, the actual tort-feasor. In Bowen v. Magic Mart of Corinth, 441 So.2d 548 (Miss. 1983), this Court held that the employer's workers compensation carrier could not reduce benefits to the employee by the amount already paid to the employee through her own personal policy of health and accident insurance. Bowen is in line with decisions in a majority of jurisdictions, which have barred such recovery by workers' compensation carriers against a worker's own uninsured motorist coverage. See 2A Larson, Workmen's Compensation Law § 71.23(a). However, some jurisdictions have distinguished recovery from the employee's own uninsured motorist insurance policy from the employer's uninsured motorist carrier. 2A Larson's Workmen's Compensation Law § 71.23(i) states:
When it is the employer's uninsured motorist policy that is involved, one of the strongest arguments against lien or offset disappears  the argument that the employee should not be deprived of the benefits of a privately-purchased insurance contract that he has paid for himself. Nevertheless, cases have appeared holding both that such liens and offsets should be barred, and that they should be allowed. [Citations omitted].
In the case sub judice, there was no provision in the employment contract or plan between Cossitt and Morrison Heights Baptist Church, or Nationwide, that any recovery under the Nationwide policy by any employee would be credited to the employer/carrier against workers' compensation benefits.
Shelby maintains that Perkins v. Insurance Company of North America, 799 F.2d 955 (5th Cir.1986), is authority for its contention that Shelby is entitled to intervene and recover in this cause. We distinguish Perkins from the case sub judice. Perkins, an employee, was injured in a truck accident involving a truck owned by his employer and being driven by a co-employee. Perkins filed for workers' compensation benefits and received same. He then sought to recover against his employer's uninsured motorist coverage. INA, the uninsured motorist insurer, moved for summary judgment against Perkins on the ground that there was no uninsured motorist benefits due an employee whose injury was caused by the negligence of a co-employee, and that the employee's only remedy was workers' compensation. The District Court granted summary judgment in favor of INA and, on appeal to the Fifth Circuit, the Court rejected Perkins' contentions and held that under the Mississippi Uninsured Motorist statute he is entitled to benefits from INA only if he is legally entitled to recover his damages from the owner or operator of an uninsured vehicle. Obviously, Perkins is no authority for the question here.
*887 Sawyer v. Head, 510 So.2d 472, 478 (Miss. 1987), interpreted the legislative intent of Mississippi Code Annotated § 71-3-71 as the prevention of "double recovery for injuries sustained in a compensable accident." We do not read Sawyer v. Head to be inconsistent with Bowen or to modify Bowen.
The record does not reflect that either Cossitt or her employer's carrier Shelby filed suit against tortfeasor Lester Davis or received anything from him and his carrier. Therefore, we must assume that no recovery was sought. Instead, Cossitt filed a direct action, i.e., third party claim, in the interpleader party suit against Nationwide. We are of the opinion that Shelby had no claim to the insured motorist benefits provided by the Nationwide policy, and that the lower court committed error in allowing Shelby to intervene and to permit its recovery of workers' compensation benefits paid by it to Cossitt.
We hold that the judgment of the lower court should be, and is:
(1) affirmed on denial of transfer to the circuit court for jury trial;
(2) reversed and rendered on stacking uninsured motorist coverage on three buses covered by the church's policy;
(3) affirmed on the issue of Nationwide's "bad faith" and on denial of punitive damages;
(4) reversed and rendered on the issue of allowing Shelby, the workers' compensation carrier of Morrison Heights Baptist Church, to intervene and permitting it to recover from Cossitt's share of the uninsured motorist coverage; and
(5) remanded to the lower court for such further action as may be consistent with this opinion.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART AND REMANDED TO THE LOWER COURT FOR SUCH FURTHER ACTION AS MAY BE CONSISTENT WITH THIS OPINION.
HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.

APPENDIX I
On April 10, 1984, the defendants were traveling to Belzoni, Mississippi, on a bus owned by Morrison Heights Baptist Church, Clinton, Mississippi. The bus was required to stop near a railroad crossing on Highway 49 East between Morton [sic] in Holmes County and Eden in Yazoo County. While the bus was stopped, the three defendants disembarked and while on the shoulder of the road were struck by a vehicle being driven by Lester Davis. The collision with the Davis vehicle resulted in the death of McDaniel and serious injuries to Cossitt and White.
At the time of the collision, the church had an automobile insurance policy with Nationwide Mutual Insurance Company in which the church was the named insured and policyholder under the policy, covering the bus on which the three defendants had been riding and from which they disembarked prior to being struck by the Davis vehicle. This policy did include an insured motorist provision. The policy also had two other motor vehicles along with said bus being listed in the policy. The policy provided $25,000 coverage for uninsured motorists. Plaintiff at first denied coverage, although it did invite any further information that it might consider [sic] in that regard. Later, however, the company did file an interpleader action in this court, interpleading $25,000 and asking that the Court make distribution among the defendants here.
Defendant McDaniel settled with the company, agreeing to take one-third of the $25,000, subject to the approval of the Court. Defendants White and Cossitt counter-claimed asking the Court to "stack" the $25,000 limit on each of the three vehicles contained in the policy to make a total of $75,000 and also to award punitive damages for alleged bad faith on the part of the plaintiff in originally denying the claim.
Evidence was adduced, arguments were made, briefs were written and submitted to the Court and the Court, having had the *888 matter under advisement, now renders this opinion in the cause.
This cause is not one in which stacking of insurance policies can occur. Although the policy itself has a provision with regard to coverage which states "You or any family member" are the insured. Nevertheless, the Morrison Heights Baptist Church, while it has many of the characteristics of a family, nevertheless it is a religious corporation and not in that sense the same as the family described in the description of who is the insured under the contract. On the contrary, the defendants herein, although members of that church are nevertheless covered in this accident under the second status, being that of anyone else occupying a covered auto. This second class status prevents under our law the stacking of insurance policies. Here we have a fleet of buses and not individual automobile policies such as would subject the policies to being stacked because of the individual consideration paid for each one of the policies. Here the three vehicles were simply listed in the fleet policy for the church. The policy provided by Nationwide in this case limits recovery under the facts of the case to $25,000 and this amount must be apportioned among the defendants White, Cossit and McDaniel, plus interest on said amount from the date of the accident, the plaintiff agreed to this at the trial. The Court understands that the three defendants have agreed that the amount may be divided equally three ways.
Defendants Cossitt and White have each counter-claimed for punitive damages based on bad faith in the denial of their claims originally.
The facts in the case simply do not justify a determination that plaintiff was guilty of bad faith in at first refusing the claims. There was at the time of the accident and the investigation for the two months following no Mississippi case construing the word "occupying" as used in the coverage clause and the adjuster concluded that since the defendants were not inside the bus at the time of the accident that they were not "occupying" the bus and that there was no coverage. The letters disclaiming coverage in the matter did invite any further information that might throw new or different light on the claim for the insurance company to consider, but none was forthcoming.
Later on, however, the company did engage counsel to re-examine the matter and local counsel for the plaintiff did in re-examining the situation make a determination that there was coverage and that it was obvious that the policy limits would not cover the damage done to the three defendants. Relying on the case of Stephens [Stevens] v. United States Fidelity & Guaranty Company, 345 So.2d 1041 (Miss. 1977), plaintiff's counsel made the determination that the Supreme Court of the State of Mississippi would rule that the defendants were occupying the bus within the meaning of the word as used in the contract and applied to this accident. The word "occupying" was not construed by the Supreme Court in the Stephens [Stevens] case, the word there construed being the word "using." But the matters were sufficiently related for counsel to make the determination that coverage was present.
On the basis of this determination and also that it was impossible to determine how to apportion the $25,000 it admitted that it owed to the parties defendant here, plaintiff filed the present suit and tendered into Court the $25,000 which it admitted it owed and asked the Court to make the determination as to how it was to be apportioned. This did, of course, take the matter away from the possibility of a circuit court trial by jury and the possibilities of the punitive damage issue being submitted to a jury. This Court did decline to approve the Motion to Transfer to Circuit Court, finding that the plaintiff was within its right to file the suit where it did.
It was urged upon the Court that the suit filed herein on the part of the plaintiff was an admission by the plaintiff that it was guilty of bad faith in declining the claim in the first instance. For very obvious reasons, this argument must be entirely rejected.
*889 Looking at the situation at the time of the original investigation by the plaintiff's adjuster, the Court is satisfied that although the adjuster may have been wrong in declining coverage, nevertheless, there is no evidence of any gross negligence or malice or bad faith as a result of this action. On the contrary, it appears to this Court that the plaintiff should be commended for even after almost a year following the accident that it did make a determination to investigate further into the state of the law as applied to this incident and without having been sued to have changed its determination as to coverage, admitted coverage and paid the money into Court. Perhaps it should have first asked the three parties to see if they could reach an agreement as to the division of the $25,000 plaintiff was prepared to admit it owed. Nevertheless, it cannot be said that the failure to do this was evidence of bad faith since they forthwith did file suit and interplead the $25,000 for the determination of the chancery court. The claim for punitive damages for bad faith must be rejected.
With regard to the petition of Shelby Mutual Insurance Company to intervene in this action, the Court finds that Shelby Mutual paid benefits under the Workers' Compensation Act to Defendant Cossitt who was an employee of Morrison Heights Baptist Church in the amount of $25,807.90. Shelby Mutual alleged that it was entitled to recover from whatever sums are due Defendant Cossitt in this proceeding any amount up to the amount of $25,807.90 which Shelby Mutual had paid to her.
This matter also raises somewhat difficult questions for the consideration of the Court in this matter. In the instant case, the tortfeasor is Lester Davis, the driver of the vehicle which inflicted the damage to Defendant Cossitt and the others. There is no question but what Defendant Cossitt had a right of action against the tortfeasor who was uninsured or under-insured.
The insurance contract which Plaintiff had with Morrison Heights Baptist Church provided that the insurance company had the right to join in the action and to be entitled to repayment of the amount paid by them as compensation and medical expenses from the net proceeds of such action after deducting the reasonable cost of collection. Had Ms. Cossitt recovered in excess of what the insurance carrier had paid out to her under the workers' compensation statute then, of course, she would be entitled to retain all that the insurance carrier was not entitled to be reimbursed. Here, since it is less than the amount the insurance carrier is entitled to recover and be reimbursed up to the amount received less recovery costs, under the circumstances in this case, the Court is of the opinion that Ms. Cossitt would be entitled to offset recovery costs and if the parties can agree, this may be submitted to the Court or if a further hearing is needed to determine recovery costs that may be done. A Judgment may be submitted to the Court after submission of all parties herein for their approval embodying the foregoing provisions.

APPENDIX II
In its previous opinion of January 21, 1987, the Court reserved the determination of the amount of money which Ms. Cossitt should be entitled to out of the recovery made on her behalf before paying the then remaining balance to Shelby Mutual Insurance Company. The Court is of the opinion that Ms. Cossitt had the right to employ counsel to represent her and pursue the possibility of recovery on her own behalf of all of the elements of the case. Had she been successful in recovering more than the amount actually recovered under the opinion of this Court, she would have been permitted to have retained all of the money not necessary to reimburse Shelby Mutual. Under the circumstances here, the Court is of the opinion that she is entitled to offset against the amount recovered which is one-third of twenty-five thousand dollars ($25,000) plus her share of the prejudgment interest, all her attorney's fees and expenses under the contract under which he represented her. The Court determines this to be three thousand six hundred and fifty-seven dollars and seventy-two cents ($3,657.72), including expenses. Shelby *890 Mutual is entitled to payment of the balance of Ms. Cossitt's one-third of the total amount recovered by the three parties after payment to her and her attorney of the said three thousand six hundred and fifty-seven dollars and seventy-two cents ($3,657.72). This along with other provisions of the previous opinion may be reduced to a judgment and presented for signature.