IRVING, J.,
for the Court.
¶ 1. Bridgett Blakeney was employed by the Laurel Housing Authority (LHA) when she was injured in a work-related car accident. Blakeney initially received workers’ compensation payments for her injuries. After the LHA’s workers’ compensation insurance company went bankrupt, Blake-ne/s workers’ compensation payments became the responsibility of the Mississippi Insurance Guaranty Association (MIGA). Thereafter, MIGA filed a motion with the Mississippi Workers’ Compensation Commission (Commission) requesting permission to suspend benefit payments to Blake-ney. MIGA sought suspension of benefits until it had received credit for a total of seventy thousand dollars which was the amount that Blakeney had received from solvent insurance companies: ten thousand dollars from the insurance company covering the third party driver at fault and sixty thousand dollars from the insurance company providing liability and uninsured motorist coverage for the LGA.
¶ 2. The motion was heard by an administrative law judge, who found that MIGA was entitled to the full setoff of seventy thousand dollars minus Blakene/s costs and expenses incurred in recovering the seventy thousand dollars. Both Blakeney and the LGA appealed to the Commission. The Commission, applying the provisions of Mississippi Code Annotated section 71- *210 3-71 (Rev.2000), determined that MIGA was only entitled to credit for the ten thousand dollars, minus costs and expenses incurred by Blakeney, paid by the third party tortfeasor’s insurance company. MIGA appealed the Commission’s decision to the Jones County Circuit Court, which affirmed the decision of the Commission without further comment.
¶ 3. Feeling aggrieved, MIGA appeals and asserts: (1) that the exhaustion provision of the Mississippi Insurance Guaranty Association Law (MIGAL), found in Mississippi Code Annotated section 83-23-123 (Rev.1999), requires a claimant to exhaust solvent uninsured motorist coverage before collecting from MIGA on an insolvent worker’s compensation claim; (2) that Cossitt v. Nationwide Mutual Insurance Co., 551 So.2d 879 (Miss.1989) does not preclude MIGA from receiving a statutory credit under section 83-23-123; (3) that MIGA is entitled to a one-hundred-thousand-dollar credit, which MIGA alleges is the “net face amount of the available solvent insurance”; and (4) that MIGA’s credit should not be reduced by the amount of attorney’s fees and expenses incurred by Blakeney.
¶ 4. Finding no reversible error, we affirm.
FACTS
¶ 5. Blakeney was a passenger in a vehicle driven by a coworker on June 3, 2002, when the vehicle was involved in an accident with a vehicle driven by Ray Arring-ton. It is undisputed that the accident was Arrington’s fault. As a result of the accident, Blakeney suffered serious injuries.
¶ 6. Arrington was insured by a policy through Progressive Gulf Insurance Company. Blakeney ultimately received ten thousand dollars from Progressive, which was the full value of Arrington’s policy. Blakeney was covered by the LHA’s insurance. The LHA had uninsured motorist coverage through Coregis Insurance Company. When a demand was made to Core-gis, Coregis refused to cover Blakeney’s injuries, arguing that the LHA had rejected uninsured motorist coverage in writing. As a result of Coregis’s refusal to pay, Blakeney filed suit against Coregis in the Jones County Circuit Court. Coregis moved for summary judgment, but the circuit court denied the motion. Thereafter, Coregis sought an interlocutory appeal to the Mississippi Supreme Court, and while the appeal was pending, Coregis and Blakeney entered into settlement negotiations, the result of which was that Coregis paid Blakeney sixty thousand dollars to settle her claims.
¶ 7. Beyond the payments from Progressive and Coregis, Blakeney was also receiving workers’ compensation benefits from Legion Insurance Company, the LHA’s workers’ compensation carrier. On July 25, 2003, Legion was declared insolvent by the Commonwealth Court of Pennsylvania. As a result, Legion’s obligations were taken over by MIGA, which was created by the Mississippi Legislature as a non-profit association to pay covered insurance claims after a carrier has become insolvent. On November 20, 2007, MIGA filed a motion with the Commission, requesting permission to suspend benefit payments to Blakeney. In the motion, MIGA alleged that Blakeney had received or would receive seventy thousand dollars in benefits from the Progressive and Core-gis policies. MIGA further alleged that it was entitled to credit for the seventy thousand dollars because of the MIGAL’s exhaustion provision. In so arguing, MIGA acknowledged that the Mississippi Supreme Court had not yet ruled on “whether the exhaustion statute applies to solvent uninsured motorist policies such as the Coregis policy.” MIGA also acknowledged *211 that the subrogation rights found in Mississippi Code Annotated section 71-3-71 “do not extend to the recovery of uninsured motorist benefits.” Nevertheless, MIGA argued that MIGAL should apply instead of the workers’ compensation provisions found in section 71-3-71. Ultimately, MIGA requested a suspension of its obligation to pay Blakeney “until such time as seventy thousand dollars in indemnity and medical benefits have accrued .... ” MIGA filed a petition to controvert with the Commission on November 26, 2007, which also essentially sought credit for the seventy thousand dollars in coverage that Blakeney had received from the other insurance companies.
¶ 8. MIGA’s motion was first heard by an administrative law judge, who ruled that MIGA was entitled to a credit of seventy thousand dollars due to the amounts that Blakeney had received from the other insurance companies. Both Blakeney and MIGA appealed the judge’s decision to the Commission. On July 10, 2008, after a March 17, 2008, hearing, the Commission issued an order, wherein it found: (1) that MIGA was bound by the provisions of section 71-3-71, rather than by MIGAL alone; (2) that “MIGA has stepped into the shoes of Legion, and not only has all the same rights as Legion would have, but the same ‘obligations’ as well”; (3) that MIGA was entitled to an offset for the ten thousand dollars from Progressive “after first deducting the reasonable costs of collection,” which the Commission found was four thousand dollars in attorney’s fees; and (4) that MIGA was not entitled to any offset from the sixty thousand dollars that Blakeney received from Coregis. MIGA then appealed the Commission’s ruling to the Jones County Circuit Court, which affirmed the Commission’s decision and found that “the decision of the Mississippi Workers’ Compensation Commission was supported by substantial evidence and ... properly applied the law to the facts.... ”
¶ 9. Additional facts will be related, as necessary, during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 10. Because this is a workers’ compensation case, our standard of review is limited and highly deferential:
The substantial evidence test is used. See Walker Mfg. Co. v. Cantrell, 577 So.2d 1243, 1245-47 (Miss.1991). The Workers’ Compensation Commission is the trier and finder of facts in a compensation claim. [We] will overturn the Workers’ Compensation Commissionfs] decision only for an error of law or an unsupported finding of fact. Ga. Pac. Corp. v. Taplin, 586 So.2d 823, 826 (Miss.1991). Reversal is proper only when a Commission order is not based on substantial evidence, is arbitrary or capricious, or is based on an erroneous application of the law. Smith v. Jackson Constr. Co., 607 So.2d 1119, 1124 (Miss.1992).
Total Transp., Inc. of Miss. v. Shores, 968 So.2d 400, 403-04(¶ 15) (Miss.2007) (quoting Weatherspoon v. Croft Metals, Inc., 853 So.2d 776, 778(¶ 6) (Miss.2003)). Furthermore, as the Total Transportation court explained:
The function of the circuit court (and of [an appellate court]) on appeal from rulings of the Workers’ Compensation Commission is to determine whether there exists a quantum of credible evidence which supports the decision of the Commission. It is not the role of the circuit courts to determine where the preponderance of the evidence lies when the evidence is conflicting, given that it is presumed that the Commission, as *212 trier of fact, has previously determined which evidence is credible and which is not. Metal Trims Indu[s.], Inc. v. Stovall, 562 So.2d 1293 (Miss.1990).
Id. at 404(¶ 15) (quoting Hale v. Ruleville Health Care Ctr., 687 So.2d 1221, 1224-25 (Miss.1997)). We note that this standard of review has also been applied in at least one workers’ compensation case involving MIGA. See Miss. Ins. Guar. Ass’n v. Brewer, 922 So.2d 807, 811(¶ 13) (Miss.Ct.App.2005). We also remain cognizant of the fact that “[d]ue to the beneficent purposes of the Mississippi Workers’ Compensation Act, we construe the statutes liberally in favor of injured workers.” ABC Mfg. Corp. v. Doyle, 749 So.2d 43, 47(¶ 17) (Miss.1999) (citing Metal Trims Indus., Inc., 562 So.2d at 1297; Big “2” Engine Rebuilders v. Freeman, 379 So.2d 888, 889 (Miss.1980)).
¶ 11. In Mississippi Insurance Guaranty Association v. Goldin Properties, Inc., 893 So.2d 1062, 1063(¶3) (Miss.Ct.App.2004), this Court briefly discussed the history of MIGA and its creation:
MIGA administers a fund created to partially pay the claims against those insurers declared insolvent. This organization was created by the Mississippi [Legislature and is governed by the numerous [... ] sections contained in Mississippi Code Annotated volume 83, chapter 23. This fund is funded through assessments of its members based on “net direct written premiums” as a portion of their business generated in Mississippi. All insurance companies licensed to do business in Mississippi are members of MIGA. MIGA cannot assess collections of premiums made by non-MIGA members. Therefore, MIGA does not cover the claims against insolvent non-MIGA members.

1. Uninsured Motorist Coverage and MIGA

¶ 12. We And that issues one and two essentially require us to answer two questions: (1) which code section, section 83-23-123 or section 71-3-71, governs the amount of credit that MIGA is entitled to receive from the proceeds paid by solvent insurance companies on behalf of the third party tortfeasor and on behalf of the employer under the uninsured motorist provision of the employer’s policy, and (2) if section 71-3-71 applies, is the LGA or its uninsured motorist insurance carrier a third party within the meaning of the statute? Therefore, we discuss issues one and two as a single issue.
¶ 13. MIGA asserts that the exhaustion provision found in section 83-23-123 should control over section 71-3-71 of the Workers’ Compensation Act. Section 83-23-123(1) reads:
Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer, which is also a covered claim, shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this article shall be reduced by the amount of any recovery under such insurance policy.
Section 71-3-71 reads, in pertinent part:
The commencement of an action by an employee or his dependents (or legal representative) against a third party for damages by reason of the injury, or the adjustment of any such claim, shall not affect the right of the injured employee or his dependents (or legal representative) to recover compensation.... The employee or his dependents bringing suit against the third party must notify the employer or carrier within fifteen days of the filing of such suit.
*213 An employer or compensation insurer who shall have paid compensation benefits under this chapter for the injury or death of the employee shall have the right to maintain an action at law against any other party responsible for such injury or death, in the name of such injured employee or his beneficiaries, or in the name of such employer or insurer, or any or all of them. If reasonable notice and opportunity to be represented in such action by counsel shall have been given to the compensation beneficiary, all claims of such compensation beneficiary shall be determined in such action, as well as the claim of the employer or insurer. If recovery shall be had against such other party, by suit or otherwise, the compensation beneficiary shall be entitled to any amount recovered over and above the amount that the employer and insurer shall have paid or are liable for in compensation or other benefits, after deducting the reasonable costs of collection.
Essentially, section 71-3-71 gives a carrier the right to intervene in a related lawsuit and also prevents a covered employee from gaining a “double” recovery if the employee receives benefits from a third party.
¶ 14. However, the ability of a workers’ compensation carrier to recover insurance proceeds has been limited by case law. Relevant to this case is the Mississippi Supreme Court’s holding in Cossitt, wherein the court found, in pertinent part, as follows:
Appellant Cossitt, who was an employee of Morrison Heights Baptist Church, contends that Shelby Mutual Insurance Company, the church’s workers’ compensation carrier, had no right to uninsured motorist benefits provided by Nationwide on the church bus, and, therefore, had no right to intervene in the interpleader suit and seek recovery from the uninsured motorist claim.
[[Image here]]
Cossitt argues that [section] 71-3-71 giving the employer a right of recovery against “any other party responsible for such injuries or death” is limited to the third party tortfeasor and does not extend to give a right of recovery against the employer’s uninsured motorist coverage carrier, and that Nationwide did not take the place of ... the actual tortfeasor....
[[Image here]]
The record does not reflect that either Cossitt or her employer’s carrier[,] Shelby[,] filed suit against tortfeasor Lester Davis or received anything from him and his carrier. Therefore, we must assume that no recovery was sought. Instead, Cossitt filed a direct action, i.e., third party claim, in the interpleader party suit against Nationwide. We are of the opinion that Shelby had no claim to the insured motorist benefits provided by the Nationwide policy, and that the lower court committed error in allowing Shelby to intervene and to permit its recovery of workers’ compensation benefits paid by it to Cossitt.
Cossitt, 551 So.2d at 885-87 (emphasis added) (overruled on other grounds). The explicit holding of Cossitt is that a workers’ compensation carrier has no claim to uninsured motorist benefits received by an injured employee.
¶ 15. Mississippi Code Annotated section 83 — 23—115(l)(b) (Rev.1999) states that: “[MIGA] shall ... [b]e deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent.” (Emphasis added). As our supreme court has stated, MIGA *214 “step[s] into the shoes” of an insolvent carrier. Miss. Ins. Guar. Ass’n v. MS Cas. Ins. Co., 947 So.2d 865, 869(¶ 7) (Miss.2006).
¶ 16. Because MIGA steps into the shoes of an insolvent carrier and is bound by the “rights, duties, and obligations of the insolvent insurer,” we find no error with the Commission’s finding that MIGA is not entitled to the sixty thousand dollars that Blakeney has received from the LHA’s uninsured motorist coverage. Under Cossitt, such recovery is explicitly forbidden. MIGA’s contentions that it should be bound only by the exhaustion provision of MIGAL are without merit. Nothing in the language of section 83-23-123(1) indicates that the exhaustion provision super-cedes any other law regarding a carrier’s right to recovery.
¶ 17. MIGA claims that section 83-23-123(1) and section 71-3-71 are “entirely different” statutes with “entirely different remedial purposes.” As such, MIGA claims that the two statutes should not be construed together. Essentially, MIGA claims that the broad language of section 83-23-123(1) should apply in every case in which MIGA becomes involved, regardless of what sort of claims are at issue and regardless of whether the insolvent carrier would have been entitled to a similar offset had it not become insolvent. MIGA claims that the doctrine of in pari materia, which means that “each section of the Code dealing with the same or similar subject matter must be read together so that the legislative intent can be determined,” does not apply in this case. James v. State, 731 So.2d 1135, 1138(¶ 11) (Miss.1999) (citing Miss. Pub. Serv. Comm’n v. Mun. Energy Agency of Miss., 463 So.2d 1056, 1058 (Miss.1985)). We disagree. In the context of workers’ compensation claims handled by MIGA, section 83-23-123(1) and section 71-3-71 deal with “similar subject matter” such that they must be considered together. We note that MIGA itself has argued before this Court that the provisions of section 71-3-71 should apply to MIGA’s benefit. Brewer, 922 So.2d at 810(¶ 7). MIGA provides no compelling reason for why the provisions of section 71-3-71 should apply to MIGA only when the section is to MIGA’s benefit, rather than its detriment.
¶ 18. MIGA also claims that section 83-23-123(1) should apply because “[t]he Guaranty Act and its exhaustion provisions are more specific and narrow than the broader Worker’s [sic] Compensation Law and its [section] 71-3-71.” MIGA claims that this is so because section 83-23-123(1) deals only with the “obligations of MIGA....” We decline to find that section 83-23-123(1) is any narrower or more specific than section 71-3-71. Section 83-23-123(1) contains a very broad exhaustion provision, which would apply in every case involving MIGA if we were to accept MIGA’s arguments. By contrast, section 71-3-71 discusses the specific rights of a workers’ compensation carrier to intervene in and receive the proceeds of an employee’s recovery from third party tortfeasors. MIGA’s contentions to the contrary are without merit.
¶ 19. MIGA submits multiple other arguments as to why it should receive a credit for the amount of uninsured motorist benefits that Blakeney has received. In addition to alleging that the workers’ compensation statutes should not apply to MIGA because of the provisions found in MIGAL, MIGA contends that it “has never sought to recover directly from Coregis the UM proceeds under the subrogation rights conferred by Miss. Code Ann. § 71-3-71. Instead, MIGA is seeking a credit against future benefits due to the claimant, by virtue of MIGA’s statutory rights under Miss.Code Ann. § 83-23-123(1).” *215 We find no merit to this argument. Regardless of MIGA’s failure to seek recovery directly from Coregis, the ultimate question is whether MIGA is entitled to the amount that Blakeney received from solvent uninsured motorist coverage, provided by Coregis, as setoff against MIGA’s workers’ compensation obligations to Blakeney.
¶ 20. MIGA further cites this Court’s recent opinion in Leitch v. Mississippi Insurance Guaranty Ass’n, 2007-CA-01263-COA, 15 So.3d 426 (Miss.Ct.App. Feb. 24, 2009) as support for its position that it is entitled to an offset in the amount of Blakeney’s uninsured motorist insurance proceeds. However, we find that our holding in Leitch is distinguishable from the present case. Here, MIGA’s obligations to Blakeney arise from a workers’ compensation claim, which implicates workers’ compensation statutes and other law. In Leitch, however, MIGA’s obligation to the claimant arose in the context of automobile liability insurance. Id. at (2). It is the particular nature of workers’ compensation insurance that led to the Commission’s decision. If MIGA’s obligations to Blake-ney arose outside the context of a workers’ compensation commission, the result in this case would almost certainly be different. Furthermore, we note that the Mississippi Supreme Court has granted William Leitch’s request for certiorari. Leitch v. Miss. Ins. Guar. Ass’n, 15 So.3d 426 (Miss.2009). Therefore, we would be reluctant to treat Leitch as settled law carrying authoritative weight.
¶ 21. MIGA also cites and discusses a number of cases from other jurisdictions. We find that these cases are inapplicable, as there is sufficient Mississippi law, which we have already discussed, to support the Commission’s decision.
¶22. We find that the Commission’s decision is also consistent with the principle that workers’ compensation statutes should be construed liberally in favor of injured employees.
¶ 23. This contention of error is wholly without merit.

2. The Correct Amount of MIGA’s Credit

¶ 24. In this issue, MIGA contends that “it is in fact entitled to suspend benefits until the entire face amount of the one hundred thousand dollars in available benefits have accrued. One hundred thousand dollars is the total amount of solvent insurance benefits available to Ms. Blakeney (ten thousand dollars in benefits from the driver’s policy, plus ninety thousand dollars in UM benefits).”
¶ 25. This issue is moot, as MIGA is not entitled to a setoff for the uninsured motorist proceeds received by Blakeney. We affirm the Commission’s decision that MIGA is entitled to the ten thousand dollars from the Progressive policy, minus the attorney’s fees and costs that Blakeney expended in recovering that amount.

3. Reduction for Costs of Collection

¶ 26. In its final issue, MIGA contends that Blakeney is not entitled to reduce MIGA’s credit by the costs of collection. MIGA’s reasoning for this issue is the same as that discussed in issue one; that is, MIGA argues that the reduction provisions are found only in section 71-3-71 and not in section 83-23-123(1). As we have already stated, MIGA stepped into the shoes of Legion, the insolvent insurer. As such, it is bound by section 71-3-71. Therefore, we find no error with the Commission’s decision to reduce the amount of MIGA’s setoff by Blakeney’s collection expenses.
¶ 27. MIGA also briefly challenges the factual basis for the four thousand dollars *216 in expenses claimed by Blakeney. We defer to the Commission’s factual findings on this issue, in the absence of more compelling evidence to the contrary in the record.
¶ 28. This contention of error is also without merit.
¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF JONES COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.