# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 92-CA-00699-SCT

*MISSISSIPPI FARM BUREAU CASUALTY INSURANCE COMPANY*

*v.*

*JANICE T. CURTIS, INDIVIDUALLY, AND FOR AND ON BEHALF OF RICHARD W. CURTIS; KIM C. CRANFIELD AND MARY ELIZABETH CURTIS, STATUTORY HEIRS OF RICHARD W. CURTIS, JR., DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 6/11/92 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | SAM. S. THOMAS |
| ATTORNEY FOR APPELLEES: | JOHN E. ELLIS |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 7/25/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/15/96 |

### EN BANC.

### DAN LEE, CHIEF JUSTICE, FOR THE COURT:

¶1. On June 23, 1990, Richard W. Curtis, Jr., Deceased (hereinafter the Deceased), was the driver of a 1981 Toyota sedan that was involved in an automobile accident with a vehicle operated by Mabrie Chris Gilmer. The accident proximately caused the death of the Deceased. The Toyota sedan was owned by Raymond Hackler (hereinafter Hackler), a friend of the Deceased and insured by a policy of insurance (No. A055607) issued by Mississippi Farm Bureau Mutual Insurance Company (hereinafter Farm Bureau Mutual) to Raymond and Christina Hackler. A claim was made against this policy by Janice T. Curtis (hereinafter Curtis), mother of the Deceased, on behalf of the heirs of the Deceased, for uninsured/underinsured motorist (UM) benefits, and Farm Bureau Mutual paid the heirs at law and statutory, wrongful death beneficiaries $10,000 in benefits under the terms of this policy. In addition to the 1981 Toyota sedan, the Hacklers owned three other vehicles and insured each with separate insurance policies (Nos. A267135, A648962, and A733336) issued by Mississippi Farm Bureau Casualty Insurance Company (hereinafter Farm Bureau Casualty).

¶2. In her complaint, Curtis claimed entitlement to the UM benefits, totaling a sum of $30,000, provided through the three additional policies issued by Farm Bureau Casualty although not one of the three vehicles insured under these policies was involved in the accident. Curtis further claimed a right to an award of punitive damages against Farm Bureau Casualty for its refusal to pay UM benefits under the three additional policies.

¶3. On November 5, 1991, Farm Bureau Casualty filed a motion for summary judgment, or in the alternative, partial summary judgment. This was followed on December 12, 1991, by Curtis's motion for summary judgment against Farm Bureau Casualty. The Honorable Frank G. Vollor, Circuit Court Judge for Warren County, Mississippi, entered final judgment on June 11, 1992, in favor of Curtis as to the right to recover under the three Farm Bureau Casualty policies and in favor of Farm Bureau Casualty as to the claim for punitive damages.

¶4. Following the entry of the court's final judgment, Farm Bureau Casualty timely filed its notice of appeal raising the following issues:

**I. WHETHER THE TRIAL COURT ERRED IN RENDERING SUMMARY JUDGMENT IN FAVOR OF CURTIS AND AGAINST FARM BUREAU CASUALTY AND AWARDING TO CURTIS THE UM BENEFITS OF POLICY NOS. A267135, A648962 AND A733336 ISSUED BY FARM BUREAU CASUALTY TO HACKLER, FOR A FINAL JUDGMENT IN FAVOR OF CURTIS AND AGAINST FARM BUREAU CASUALTY IN THE AMOUNT OF $30,000 WITH INTEREST AT THE LEGAL RATE FROM AND AFTER DECEMBER 6, 1990?**

**II. WHETHER THE TRIAL COURT ERRED IN DISMISSING, WITH PREJUDICE, THE PUNITIVE/EXTRA-CONTRACTUAL DAMAGE CLAIM OF CURTIS AGAINST FARM BUREAU CASUALTY?**

¶5. Curtis also timely filed her cross-appeal raising the following issue:

**III. WHETHER AMBIGUITY IN THE UM ENDORSEMENT MUST BE RESOLVED IN FAVOR OF THE INSURED PERMISSIVE DRIVER, OR ALTERNATIVELY,**

**WHEN THE POLICY LANGUAGE AND UM ENDORSEMENT PROVIDES FOR MULTIPLE COVERAGES AND ISSUANCE OF INSURERS' AUTOMOBILE FLEET POLICY, WHETHER THE MULTI-CARS UM COVERAGES ARE STILL AVAILABLE TO PERMISSIVE DRIVERS ALTHOUGH THE INSURER ISSUES SEPARATE DECLARATION PAGES TO ITS MULTIPLE-CARS POLICY.**

## STATEMENT OF THE CASE

¶6. Curtis, in her individual and representative capacities, initiated this action in the Circuit Court of Warren County, Mississippi, on February 4, 1991. The complaint alleged that the Deceased was fatally injured in a two-car automobile wreck through the negligence of Gilmer, the uninsured driver of the other car. Curtis, on behalf of the beneficiaries and heirs at law of the Deceased, sought the UM benefits of four insurance policies allegedly issued by Farm Bureau Mutual to Hackler, owner of the car in which Curtis was driving. Curtis's claim for the UM benefits against Farm Bureau Mutual

was based on assertions that the Deceased died in an automobile accident as a result of the negligence of an uninsured motorist, Gilmer; that the Deceased was qualified for uninsured liability coverage and entitled to stack the coverage of all four insurance policies held by Hackler; and that the limit of liability for UM coverage was $10,000 on each policy for an aggregate amount of $40,000. Finally, Curtis also claimed a right to recover punitive/extra-contractual damages as a result of Farm Bureau Mutual's intentional refusal to fully pay the aggregate limits of coverage in the four insurance policies in effect and allegedly applicable to the accident.

¶7. Farm Bureau Mutual answered the complaint admitting that Curtis was entitled to recover the UM benefits available under the terms of the insurance policy issued by Farm Bureau Mutual to Hackler that covered the vehicle the Deceased was permissibly using at the time of the accident. However, Farm Bureau Mutual denied issuing the three other policies held by Hackler and referred to in Curtis's complaint.

¶8. Farm Bureau Casualty voluntarily entered its appearance in the matter by joining in the answer of Farm Bureau Mutual. Farm Bureau Casualty admitted issuing three of the insurance policies referred to in the complaint to Hackler but denied that the Deceased was an "insured" under the terms of any of the three policies they issued to Hackler.

¶9. Curtis and Farm Bureau Casualty entered into an agreed stipulation of facts and, pursuant to the stipulation and by further agreement of the parties, Farm Bureau Mutual was dismissed from the lower court action. Both Curtis and Farm Bureau Casualty filed motions for summary judgment, and Farm Bureau Casualty alternatively requested the trial court to dismiss the punitive/extra-contractual damages claim of Curtis.

¶10. Finding that the motions of the parties presented questions of law, the trial court ruled on the summary judgment motions of the parties and entered its final judgment pursuant to Rule 54(b) on June 11, 1991. The trial court rendered judgment in favor of Curtis against Farm Bureau Casualty as to the insurance coverage claim in the amount of $30,000. The trial court, finding no issue of material fact as to the punitive/extra-contractual damages claim, rendered judgment in favor of Farm Bureau Casualty dismissing that claim with prejudice.

¶11. Farm Bureau Casualty timely filed a notice of appeal of the judgment entered in favor of Curtis, and Curtis cross-appealed the trial court's dismissal of the punitive/extra-contractual damages claim against Farm Bureau Casualty.

## STATEMENT OF THE FACTS

¶12. Curtis and Farm Bureau Casualty stipulated to most of the relevant facts in a stipulation of facts made a part of the parties' motions for summary judgment. They include:

> 1. On June 23, 1990, Richard W. Curtis, Jr., Deceased (hereafter "the Deceased") was the [permissible] driver of a 1981 Toyota Sedan that was involved in an automobile accident with a vehicle operated by Mabrie Chris Gilmer ("Gilmer"). The accident proximately caused the death of the Deceased.

> 2. Gilmer was an uninsured motorist at the time of the accident. The accident was caused by

negligence on the part of Gilmer. The damages to the estate, heirs at law and statutory wrongful death beneficiaries of the Deceased are in excess of $40,000.00. The estate of the Deceased no longer has a claim as a result of the wrongful death of the Deceased since all damages to the estate have previously been paid.

3. Prior to the accident, Farm Bureau Mutual had issued a policy of insurance to Raymond and Christina Hackler, being Policy No. A055607, that applied to Deceased and to the vehicle [permissibly] driven by the Deceased at the time of the accident. . . . [This policy provided UM benefits in the amount of $10,000.00, and Farm Bureau Mutual has paid this amount to Curtis.]

4. Prior to the accident, Farm Bureau Casualty had issued three additional but separate policies of insurance to Raymond Hackler . . . for UM coverage [for three additional vehicles]. These . . . Polic[ies] Nos. A267135, A648962 and A733336 . . . applied to a 1980 Dodge Sedan, a 1983 Nissan Pickup and a 1989 Honda Sedan, respectively, which three vehicles were [also] owned by Hackler. These three vehicles were not physically involved in the accident that resulted in the death of the Deceased. The only vehicle physically involved in the accident which resulted in the death of the Deceased, on which Farm Bureau Casualty or Farm Bureau Mutual had issued an automobile insurance policy, was the automobile [1981 Toyota Sedan] driven by the Decedent with permission [which was covered by insurance policy A055607 issued by Farm Bureau Mutual]. The [subject] policies . . . issued by Farm Bureau Mutual and Farm Bureau Casualty were in full force and effect at the time of the accident. The named insured, [Hackler,] had not rejected the UM coverage required to be provided pursuant to Section 83-11-101 of the Mississippi Code and had paid separate premiums for the UM coverage on the three policies issued by Farm Bureau Casualty.

5. The three policies issued by Farm Bureau Casualty contain statutory UM, bodily injury coverage with limits of $10,000.00 per person and $20,000.00 per accident. If [Curtis] is determined to be entitled to recover UM benefits under the three [subject] policies issued by Farm Bureau Casualty . . . then [Curtis] is entitled to recovery of $30,000.00 in contractual, UM benefits from Farm Bureau Casualty.

6. [Curtis] claims entitlement to stack the UM benefits provided through the four policies in question, one of which was issued by Farm Bureau Mutual and three of which were issued by Farm Bureau Casualty.

7. Farm Bureau Casualty contends that [Curtis] cannot recover UM benefits under the three policies issued by Farm Bureau Casualty to Raymond Hackler.

8. The . . . contractual claims [made by Curtis] against Farm Bureau Casualty are based only on the UM coverage required by Section 83-11-101 of the Mississippi Code, which statutory coverage was not rejected in whole or in part by the named insured, Raymond Hackler, on the three [subject] policies . . . that were issued by Farm Bureau Casualty.

9. The Deceased was not related to Raymond Hackler, Christina Hackler, or any named insureds on the [subject] policies issued by Farm Bureau Mutual or Farm Bureau Casualty . . . and the Deceased was not residing, at the time of or before the accident, in the household of Raymond Hackler, Christina Hackler, or any named insureds on the [subject] policies issued by

Farm Bureau Casualty or Farm Bureau Mutual . . . .

## STANDARD OF REVIEW

¶13. In determining whether the trial court properly granted summary judgment, this Court conducts a *de novo* review of the record. *Spradlin v. State Farm Mutual Auto. Ins. Co.*, 650 So. 2d 1383, 1385 (Miss. 1995); *Daniels v. GNB, Inc.*, 629 So. 2d 595, 599 (Miss. 1993).

¶14. Also, in the case *sub judice*, there is no genuine issue of material fact. The parties agreed on all factual issues and in fact set them out in a written stipulation filed with the trial court. Thus, the question before the trial court was a question of law. Our standard for review is *de novo* in passing on questions of law as well. *Seymour v. Brunswick Corp., Mercury Marine Div.*, 655 So. 2d 892, 895 (Miss. 1995); *Denson v. George*, 642 So. 2d 909, 913 (Miss. 1994); *Harrison County v. City of Gulfport*, 557 So. 2d 780, 784 (Miss. 1990). Therefore, in deciding the case at bar, the Court must look at all the information *de novo* to determine if Judge Vollor erred in holding that, as a matter of law, Curtis was entitled to recover the UM benefits provided for in the Farm Bureau Casualty policies.

## DISCUSSION OF THE LAW

**I. WHETHER THE TRIAL COURT ERRED IN RENDERING SUMMARY JUDGMENT IN FAVOR OF CURTIS AND AGAINST FARM BUREAU CASUALTY AND AWARDING TO CURTIS THE UM BENEFITS OF POLICY NOS. A267135, A648962 AND A733336 ISSUED BY FARM BUREAU CASUALTY TO HACKLER, FOR A FINAL JUDGMENT IN FAVOR OF CURTIS AND AGAINST FARM BUREAU CASUALTY IN THE AMOUNT OF $30,000 WITH INTEREST AT THE LEGAL RATE FROM AND AFTER DECEMBER 6, 1990?**

¶15. The controlling issue in the case *sub judice* is whether Curtis was an "insured" under the policies providing the UM benefits sought. This Court, in *State Farm Mutual Auto. Ins. Co. v. Davis*, 613 So. 2d 1179 (Miss. 1992), recently addressed this issue in a case very similar to the case at bar. As in the present case, the issue in *Davis* was whether the decedent was an "insured" for UM purposes under two policies issued by the insurer to persons who were not related to the decedent. The decedent in *Davis* was a guest passenger in a 1987 Nissan vehicle covered by a UM policy issued to the owners of the vehicle involved in the accident. This Court in *Davis* termed that vehicle as the "accident vehicle." *Davis*, 613 So. 2d at 1180-81.

¶16. As in the case *sub judice*, in *Davis* the owners of the "accident vehicle" had in full force and effect other policies providing UM coverage and applicable to other vehicles owned by the owners, a 1983 Chevrolet and a 1988 Pontiac. The issue in *Davis* was whether the decedent was an "insured" for purposes of the UM coverage of these other separate policies, not applicable to the "accident vehicle," when the decedent was not a relative of the persons to whom the other policies were issued, and when the vehicles covered by the other policies were not the "accident vehicle." *Id*.

¶17. In *Davis,* as in the case at bar, the UM coverage applicable to the accident vehicle was paid by the insurer but the insurer refused to pay the UM coverage available through the policies applicable

to other vehicles. The lower court rendered a judgment against the insurer awarding the UM benefits of the other policies applicable to vehicles not involved in the accident. This Court reversed the lower court's judgment against the insurer. ***Davis***, 613 So. 2d at 1179-80. The Court held that "[i]n order to recover the UM benefits provided by an insurance policy, the claimant must first prove that he/she is an 'insured' under either the insurance policy and/or the UM statute." ***Davis***, 613 So. 2d at 1180 (citing ***Gillespie v. Southern Farm Bureau Casualty Ins. Co.***, 343 So .2d 467, 471 (Miss. 1977)).

¶18. The Hacklers' Farm Bureau Casualty policies contain the same definition of an "insured" for purposes of the uninsured motor vehicle coverage:

> (a) Insured. The unqualified word "Insured" means
>
> (1) the First Named as stated in the declarations of the policy and while residents of the same household, his spouse and relatives of either,
>
> (2) any permissive user or guest while occupying an insured automobile.

The UM statute contains the following definition:

> The term "insured" shall mean the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies, or the guest in such motor vehicle to which the policy applies, or the personal representative of any of the above. The definition of the term "insured" given in this section shall apply only to the uninsured motorist portion of the policy.

Miss. Code Ann. § 83-11-103(b) (1991).

¶19. According to these definitions, the Deceased is not an "insured" under the policies at issue in the case *sub judice* because he was not a permissive driver in any of the vehicles covered by the Farm Bureau Casualty policies, including a 1980 Dodge sedan, a 1983 Nissan pickup truck and a 1989 Hyundai sedan. The Deceased was an "insured" only under the policy covering the accident vehicle, a 1981 Toyota sedan.

¶20. Although at the time the summary judgment motion in the case at bar was ruled upon ***Davis*** had not been decided, the case law prior to the accident in the present case recognized that Section 83-11-103(b) distinguishes two categories of insured: Class 1: The named insured and, while resident of the same household, the named insured's spouse and relatives of either, while in a motor vehicle or otherwise. Class 2: A guest passenger in such motor vehicles to which the policy applies. ***Meadows v. Mississippi Farm Bureau Ins. Co.***, 634 So. 2d 108, 110 (Miss. 1994) (citing ***Harris v. Magee***, 573 So.2d 646, 656 (Miss.1990)). "Those in the first category, or Class 1 insureds, are given broad coverage including protection while they are in a motor vehicle or otherwise. Those in Class 2 are granted restrictive rights and are afforded coverage only by virtue of their occupancy of the particular vehicle at the time of the accident." ***Meadows***, 634 So. 2d at 110 (citing ***Aetna Casualty & Surety Co. v. Barker***, 451 So.2d 731, 734 (Miss.1984); ***Lowery v. State Farm Mutual Auto. Ins. Co.***, 285 So.2d 767, 771 (Miss.1973)).

¶21. The Fifth Circuit had addressed this same issue when it affirmed a district court's judgment

denying UM benefits in a case very similar to the case *sub judice*. ***Delancey v. State Farm Mutual Auto. Ins. Co.***, 918 F.2d 491 (5th Cir. 1990). In ***Delancey***, the court was reviewing policy language similar to that in the case at bar and was faced with the issue of whether the decedent was an "insured" under the policyholders' uninsured motorist coverage. The court noted that "in order to be an 'insured,' decedent had to have been a resident relative of a policyholder's household . . . or any person while in, on, getting into or out of an insured automobile." ***Delancey***, 918 F.2d at 492. In affirming the district court's dismissal of the suit, the court held that "policyholders cannot recover under the uninsured motorist provisions of their automobile policies for wrongful death damages unless the decedent is an insured within the terms of the policies." ***Id.*** at 495.

¶22. At the time of the accident in the present case, the law of this state was relatively clear as to whether or not the deceased in the case was an "insured" under the subject policies and therefore entitled to UM benefits provided in each.

¶23. This Court further clarified this issue in 1992, in ***State Farm Mutual Auto. Ins. Co. v. Davis***, 613 So.2d 1179 (Miss.1992). In ***Davis***, this Court held similar policy provisions were not violative of the uninsured motorist statute and, therefore, valid, holding that:

> Tammy Davis, on the other hand, was a guest passenger in only one of the three vehicles owned by the Holemans, and she was an "insured" only under the policy covering the accident vehicle. The Davises are only entitled to stack the UM coverage provided by the policies in which Tammy met the definition of an "insured" either under the terms of the policy and/or the UM statute. Thus, the Davises are only entitled to receive the UM coverage provided by their own policies and the policy covering the accident vehicle.

*Davis*, 613 So.2d at 1183 (citation omitted).

¶24. ***Davis*** and its progeny speak clearly on this first issue on appeal. The Deceased was not an "insured" under either the insurance policy or the UM statute. ***Johnson v. Preferred Risk Auto. Ins. Co.***, 659 So. 2d 856 (Miss. 1995); ***Lacy v. Allstate Ins. Co.***, 649 So. 2d 195 (Miss. 1995); ***Meadows v. Mississippi Farm Bureau Ins. Co.***, 634 So. 2d 108 (Miss. 1994); ***Miller v. Allstate Ins. Co.***, 631 So. 2d 789 (Miss. 1994); ***State Farm Mutual Auto. Ins. Co. v. Davis***, 613 So. 2d 1179 (Miss. 1992).

¶25. Therefore, the lower court erred in granting judgment in favor of Curtis against Farm Bureau Casualty.

> **II. WHETHER THE TRIAL COURT ERRED IN DISMISSING, WITH PREJUDICE, THE PUNITIVE/EXTRA-CONTRACTUAL DAMAGE CLAIM OF CURTIS AGAINST FARM BUREAU CASUALTY?**

¶26. Since we have determined that the lower court erred in granting summary judgment in favor of Curtis against Farm Bureau Casualty as to the insurance coverage issue, the lower court's dismissal of the punitive damages claim is affirmed.

> **III. WHETHER AMBIGUITY IN THE UM ENDORSEMENT MUST BE RESOLVED IN FAVOR OF THE INSURED PERMISSIVE DRIVER,**

**OR ALTERNATIVELY**

**WHEN THE POLICY LANGUAGE AND UM ENDORSEMENT PROVIDES FOR MULTIPLE COVERAGES AND ISSUANCE OF INSURERS' AUTOMOBILE FLEET POLICY, WHETHER THE MULTI-CARS UM COVERAGES ARE STILL AVAILABLE TO PERMISSIVE DRIVERS ALTHOUGH THE INSURER ISSUES SEPARATE DECLARATION PAGES TO ITS MULTIPLE-CARS POLICY.**

¶27. Curtis argues that the language in the subject policies is ambiguous and that this ambiguity must be resolved in Curtis's favor. In support of this position, Curtis directs the Court's attention to the UM endorsement found as part of each of the subject policies which contains a paragraph entitled Fleet Automobile Policy. Each policy contains the same UM endorsement which ends with the Fleet Automobile Policy paragraph. Curtis argues that the UM endorsement form extending statutorily-required UM coverage "contains language which recognized that the policy was designed to provide Multi-car coverage in a single insurance policy." This paragraph provides:

FLEET AUTOMOBILE POLICY

> [w]hen this endorsement is attached to a fleet Automobile policy and the First Named Insured is other than an individual or a husband or wife, for the purposes of this endorsement the First Named Insured shall be the person or persons so designated in Item No. 9 of the Declaration of the Fleet Automobile Policy.

(C.P. at 57) (emphasis added).

¶28. Curtis argues that "a Fleet Automobile Policy is understood to mean a single insurance policy which provides coverage for multiple cars. The UM endorsement was attached to the insurer's single policy providing automobile insurance coverage for multiple cars. Hackler's four automobiles qualified for multiple car UM coverages through the insurer's single insurance policy insuring multiple cars."

¶29. However, Farm Bureau Casualty argues, and this Court agrees, that a close reading of the subject policies will reveal that they were separate policies, covering individual automobiles, each having different policy periods and premium amounts. In addition, Curtis stipulated that the subject policies were indeed separate. Farm Bureau Casualty policies Nos. A267135, A648962 and A733336 should be treated as separate and distinct from each other and especially separate and distinct from Policy No. A055607 issued by Farm Bureau Mutual. A careful reading of the subject policies will reveal that none of the policies was a Fleet Automobile Policy. None of the policies show an Item No. 9 or a Declaration of the Fleet Automobile Policy as mentioned in the Fleet Automobile Policy paragraph of the UM endorsement. Therefore, the endorsement cannot be considered attached to a Fleet Automobile Policy as argued by Curtis.

¶30. Finally, Farm Bureau Casualty argues and the Court agrees that there is no ambiguity in the language of the subject policies as Curtis contends. The policies may require a little close reading but the policy language is not ambiguous. The policies are separate, covering separate vehicles which are owned by a non-relative of the Deceased and consequently, Curtis merits no relief on this assignment

of error.

**CONCLUSION**

¶31. The lower court's grant of summary judgment in favor of Curtis was contrary to the law of this state and, therefore, the lower court's judgment in favor of Farm Bureau Casualty dismissing the punitive/extra-contractual damages claim was proper. Accordingly, the lower court's grant of summary judgment in favor of Curtis against Farm Bureau Casualty is reversed and rendered, and the lower court's dismissal of Curtis's punitive/extra-contractual damages claim with prejudice against Farm Bureau Casualty is affirmed. Moreover, after careful review, we find no merit in Curtis's cross-appeal and the lower court's decision is affirmed.

¶32. **AFFIRMED IN PART AND REVERSED AND RENDERED IN PART ON DIRECT APPEAL: PRATHER, P.J., PITTMAN, BANKS, ROBERTS, SMITH AND**

**MILLS, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J.**

**AFFIRMED ON CROSS-APPEAL: PRATHER, P.J., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J.**

 

      **McRAE, J., DISSENTING:**

 

¶33. By virtue of the Farm Bureau Mutual policy language defining "insured," as well as Miss. Code Ann. § 83-11-103(b), Richard Curtis was an insured under the Hackler's policy covering the Toyota he was driving, and thus, aggregated UM benefits also were available to him and his wrongful death beneficiaries under the Hackler's three Farm Bureau Casualty policies. The circuit court correctly found that Curtis' heirs were entitled to summary judgment as a matter of law on the issue of UM benefits. Accordingly, I disagree with the majority's decision to reverse and render the circuit court's decision.

¶34. We have recognized that uninsured motorist coverage is personal to insureds, providing coverage for people and not for vehicles. *State Farm Mutual Automobile Insurance Co. v. Nester*, 459 So. 2d 787, 793 (Miss. 1984)(quoting Appleman, Insurance Law and Practice § 5080). *See also State Farm Mutual Insurance Co. v. Daughdrill*, 474 So. 2d 1048, 1051 (Miss. 1985)(purpose of UM coverage is "to benefit the insured by making available compensation for his property damage, bodily injuries or death."). Thus, the premium paid for UM coverage, unlike that for liability or damage coverage, is not calculated on the basis of the make, model or age of the insured's vehicle -- it matters not whether the insured drives an old pick-up truck or a late model sports car. The insured pays a premium for a block or sum certain of coverage--that is why we say it is personal to him or other insureds.

¶35. We construe the applicability of UM coverage from the perspective of the injured insured.

*Nester*, 459 So. 2d at 790; ***Harthcock v. State Farm Mutual Automobile Insurance Co.,*** 248 So. 2d 456, 460 (Miss. 1971)("In uninsured motorist insurance the insured is the injured party."). The majority correctly notes, therefore, that to recover UM benefits, "the claimant must first prove that he/she is an 'insured' under either the insurance policy and/or the UM policy." ***State Farm Mutual Automobile Insurance Co. v. Davis,*** 613 So. 2d 1179, 1180; ***Gillespie v. Southern Farm Bureau Casualty Insurance Co.,*** 343 So. 2d 467, 471 (Miss. 1977). It takes a wrong turn, however, in finding that Curtis was an "insured" only under the policy covering the accident vehicle. The Farm Bureau Casualty policies defined an "insured" for purposes of UM coverage as (1) the First Named as stated in the declarations of the policy and while residents of the same household, his spouse or relatives of either; and (2) *any permissive user* or guest while occupying an insured vehicle. By virtue of Miss. Code Ann. §83-11-103(b), an insured under a UM policy includes "any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies, or the guest in such motor vehicle to which the policy applies." Clearly, the law and the policy language applicable to guest passengers is also applicable to permissive users. Moreover, the statute does not employ the terms Class I and Class II insureds, and makes no distinction amongst the various categories of insureds (e.g., named insured, resident of the household, permissive user or guest passenger) defined in § 83-11-103(b) in terms of the UM protection afforded them.

¶36. In 1990, when the fatal accident occurred, Mississippi case law was settled on the issue of aggregating UM coverage with regard to guest passengers and permissive users. UM coverage is distinguishable from other automobile coverage such as liability and med pay. ***State Farm Mutual Automobile Insurance Co. v. Scitzs,*** 394 So. 2d 1371, 1374 (Miss. 1981). In ***Cossitt v. Nationwide Mutual Insurance Co.,*** 551 So. 2d 879 (Miss. 1989), we rejected the notion of different treatment for Class I and Class II insureds, and determined that the injured parties, passengers on a church bus who were struck by an uninsured motorist while standing outside the bus, were entitled to aggregate the coverage procured by the church on its three buses for which it paid separate premiums. Likewise, in ***Pearthree v. Hartford Accident & Indemnity Co.,*** 373 So. 2d 267 (Miss. 1980), we found that the fact that separate insurance premiums were paid on the host driver's various vehicles did not limit a guest passenger's heir's ability to aggregate the coverage available under those policies. ***See also Wickline v. United States Fidelity & Guaranty Co.***, 530 So. 2d 708, 714-715 (Miss. 1988) (all classes of insureds entitled to aggregation of policies). The waters have been muddied, however, by ***State Farm Mutual Automobile Insurance Co. v. Davis,*** 613 So. 2d 1179 (Miss. 1992) and its progeny, which have found a guest passenger to be an "insured" only in the particular vehicle in which he was riding, without regard to those policies covering any other vehicles owned and insured by the owner of the host vehicle. ***Johnson v. Preferred Risk Automobile Insurance Co.,*** 659 So. 2d 866 (Miss. 1995); ***Meadows v. Mississippi Farm Bureau Insurance Co.,*** 634 So. 2d 108 (Miss. 1994); ***Miller v. Allstate Insurance Co.,*** 631 So. 2d 789 (Miss. 1994). Without overruling any cases prior to ***Davis,*** these decisions fly in the face of our earlier rulings that eliminated the distinction between Class I and Class II insureds.

¶37. The majority's reliance on the Fifth Circuit's decision in ***Delancey v. State Farm Mutual Insurance Co.,*** 918 F.2d 491 (5th Cir. 1990) is misplaced. As distinguished from the case *sub judice*, aggregation of coverage on other UM policies carried by the owner of the accident vehicle was not at issue in *Delancey*. Rather, the various wrongful death heirs of a child struck and killed while riding her bicycle by an underinsured drunk driver sought to aggregate the UM coverage provided by their

individual policies under which they asserted that the little girl could be considered an "insured." *Delancey*, 918 F.2d at 495. In that case, each of the heirs attempted to make a personal claim under their individual UM policies for loss of consortium. However, the child was not a named insured, a resident of the same household, a guest passenger or permissive user under the terms of any of the policies that the beneficiaries sought to aggregate. Thus, the Fifth Circuit's decision in that case is totally inapposite.

¶38. The circuit court correctly found that Curtis' wrongful death beneficiaries were entitled to summary judgment on the matter of aggregation of the Hackler's UM policies. Accordingly, I would affirm the trial court's decision.

**SULLIVAN, P.J., JOINS THIS OPINION.**