345 So.2d 1041 (1977)
Jimmy STEVENS
v.
UNITED STATES FIDELITY AND GAUARANTY COMPANY.
No. 49154.
Supreme Court of Mississippi.
May 11, 1977.
James B. Floyd, III, Tupelo, for appellant.
*1042 Bramlett, Mounce & Soper, Michael G. Soper, Tupelo, for appellee.
Before INZER, P.J., SUGG and LEE, JJ., and Commissioner PIGFORD.
HOWARD R. PIGFORD, Commissioner for the Court:[1]
This action originated in the Circuit Court of Lee County in a suit by the appellant, Jimmy Stevens, against the appellee, United States Fidelity & Guaranty Company, Inc. (U.S.F.&G.) to enforce the provisions of an uninsured motorist protection policy issued by the U.S.F.&G., to the appellant's employer, G & N Motors. The policy covered the business vehicles owned and operated by G & N Motors in its business of automobile salvage and included the wrecker used by Stevens. While acting within the scope of his employment Stevens was injured by an uninsured motorist, and claimed he was covered by his employer's policy. U.S.F.&G. denied liability, and at the conclusion of Stevens' case, the court granted a directed verdict on the theory that appellant was not an insured under the terms of the policy at the time of the accident.
Stevens was injured on December 13, 1973 at a time when he was employed by G & N Motors as the operator of a wrecker of his employer. His duty was to respond to requests for a wrecker by proceeding to the scene of an accident to secure any disabled vehicle with his tow truck and then return to his employer's premises with the damaged vehicle.
Around 6:00 p.m. on the date in question, Stevens answered an emergency call to remove from the highway a truck which had been damaged in a traffic accident. Arriving at the scene, Stevens attached his wrecker to the damaged truck and pulled the truck off the highway. A police vehicle was on the scene parked on the right-hand shoulder of the highway. Stevens stopped his wrecker parallel to the police car, with the police vehicle between the traveled portion of the highway and the wrecker. The vehicle being towed by the wrecker was to the rear of the police car, with its rear edge approximately four feet from the edge of the pavement.
After parking his wrecker, Stevens got out, left the motor running, the door on the driver's side open, and all the regular and emergency lights on. He then began to sweep the debris from the collision off the highway with a broom carried in the wrecker for that purpose. After he finished sweeping the highway, Stevens started back to his wrecker, and had taken about two steps toward the wrecker when an automobile struck him. At this point Stevens had been out of his wrecker approximately one minute, and he was six to eight feet from the wrecker when struck. The towed truck was within touching distance of the appellant when he fell. As a result of this impact, Stevens suffered substantial injury, which required extensive medical treatment.
The driver of the car that hit Stevens was an uninsured motorist and Stevens sought compensation for his injuries from U.S.F.&G., the carrier of the uninsured motorist coverage on his employer's vehicles. These efforts terminated in the directed verdict granted the U.S.F.&G. by the circuit court. The lower court felt that at the time of his injury Stevens was so far removed from his insured vehicle as to prevent him from being included within the definition of insured contained in the terms of the policy, but apparently the court did not consider the definition of insured contained in the Mississippi Uninsured Motorist Coverage Act, Mississippi Code Annotated, Sections 83-11-101, -111 (1972). Section 83-11-103 defines an insured as follows:
... the term "insured" means the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and *1043 any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies, and a guest in such motor vehicle to which the policy applies, or the personal representative of any of the above; ... .
The statute creates two distinct classes of insureds with different coverage accruing to each class. The first class consists of the named insured, and while residents of the same household, his spouse and relatives of either. Their coverage against injury inflicted by uninsured motorists is quite liberal, extending to all circumstances when a member of the first class is injured by an uninsured motorist. This broad protection to members of the first class arises by virtue of the phrase "while in a motor vehicle or otherwise."
The second class consists of any person, "who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies." U.S.F.& G. argues that if the legislature had intended for permissive users to be protected while outside the insured vehicle, the phrase "while in a motor vehicle or otherwise" would have been inserted after the words "any person who," in the statute rather than limiting their coverage to periods of "use." If this contention is accepted then Stevens would be excluded from the statutory coverage as a permissive user.
We are compelled in interpreting this statute's language to shape our decision in conformity with the public policy behind this legislation as expressed in Rampy v. State Farm Mutual Automobile Insurance Co., 278 So.2d 428 (Miss. 1973).
In interpreting similar, if not identical statutes, the vast majority of jurisdictions have stated that the purpose of such uninsured motorist laws is to provide protection to innocent insured motorists and passengers injured as a result of the negligence of financially irresponsible drivers. A fine pronouncement of the policy considerations underlying uninsured motorist legislation is as follows:
A provision, drawn by the insurer to comply with the statutory requirement of uninsured motorist coverage, must be construed in light of the purpose and policy of the statute. Such a provision, drawn in pursuance of a statutorily declared public policy, is enacted for the benefit of injured persons traveling on the public highways. Its purpose is to give the same protection to the person injured by an uninsured motorist as he would have had if he had been injured in an accident caused by an automobile covered by a standard liability policy. Such provisions are to be liberally construed to accomplish such purpose.
[278 So.2d at 432].
In addition, as pointed out by Parker v. Cotton Belt Insurance Co., Inc., 314 So.2d 342 (Miss. 1975), the uninsured motorist statute is remedial in nature and must be liberally construed to accomplish its purpose.
The terms and provisions of the Mississippi Uninsured Motorist Coverage Act are written into every automobile liability policy issued in this state  unless the named insured shall reject the coverage in writing. United States Fidelity & Guaranty Co. v. Gough, 289 So.2d 925 (Miss. 1974).
Stevens contends that he was using his employer's vehicle with the consent of his employer at the time he was struck by an uninsured motorist and was therefore covered by the policy. The question in this case is, was Stevens "using" the wrecker at the time of the accident?
Black's Law Dictionary, p. 1710, defines the verb use as "to make use of, to convert to one's service, to avail one's self of, to employ." Webster's Third New International Dictionary, p. 2524, defines use as "to put into action or service: have recourse to for enjoyment of: to carry out a purpose or action by means of: indicating any putting to service of a thing."
Whether or not an injury arises from the use of a vehicle within the meaning of the statute depends upon the facts of each case. In this case it is obvious that the wrecker operated by Stevens would be used *1044 for removing disabled vehicles from the highway. Removing debris from the highway was a necessary part of the operation, and could only be accomplished by Stevens removing himself from the wrecker to perform this task. Stevens used the wrecker to secure the disabled vehicle, towed it to the shoulder of the highway and completed the necessary on site chore of sweeping debris from the traveled portion of the highway. Stevens used the wrecker from the time he left his employer's premises until he returned with the disabled vehicle, and his temporary absence from the wrecker for the purpose of performing the necessary task of removing debris from the highway did not amount to abandonment of the use of the wrecker. It could not be seriously argued that Stevens was not using the wrecker if he had been struck while outside the wrecker attaching the disabled truck to it. We discern no difference in this and Stevens' act of leaving the wrecker to sweep debris from the traveled portion of the highway. We hold that Stevens' injuries arose out of the use of this wrecker; therefore, it was error to sustain the motion for a directed verdict.
REVERSED AND REMANDED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.
NOTES
[1] Sitting pursuant to Chapter 430, Laws of 1976. The above opinion is adopted as the opinion of the Court.