**PREFERRED RISK INSURANCE COMPANY, Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, a Corporation, and Shelton Peavy, an Individual, Defendants.**

**Civ. A. No. H88–0029(W).**

United States District Court, S.D. Mississippi, Hattiesburg Division.

March 19, 1993.

---

1. The sufficiency of the jurisdictional sum is not contested.

Herman Hollensed, Hattiesburg, MS, for plaintiff.

Thomas M. Brabham, McComb, MS, Alben Hopkins, Gulfport, MS, for defendants.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before the court is the parties' stipulation of facts in this action for declaratory judgment filed by the plaintiff, Preferred Risk Insurance Company (hereinafter "Preferred Risk") under Title 28 U.S.C. § 2201.[1] The court's jurisdiction over this matter is based upon diversity, Title 28 U.S.C. § 1332.[2] The

1. Title 28 U.S.C. § 2201 provides in pertinent part:

(a) In a case of actual controversy within its jurisdiction, ..., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

2. Title 28 U.S.C. § 1332(a) provides in pertinent part:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—
(1) citizens of different States;

plaintiff, Preferred Risk, is an insurance company organized and existing under the laws of the State of Iowa and qualified to do business in Mississippi. The defendants are Insurance Company of North America, A Corporation (hereinafter "INA"), an insurance corporation organized and existing under the laws of the State of Pennsylvania and qualified to do business within the State of Mississippi; and Shelton Peavy, a resident citizen of Marion County, Mississippi and an automobile insurance policy holder with Preferred Risk.

Rooted in Shelton Peavy's vehicular accident with an uninsured motorist, this dispute among the parties seeks an answer to several questions: (1) which insurance carrier, Preferred Risk or INA bears primary responsibility to Peavy for uninsured motorist benefits when Preferred Risk insured Peavy's private automobile and INA insured the corporate accident vehicle; (2) regardless of which insurance company bears primary responsibility, whether Peavy may "stack" coverage under either INA's commercial fleet policy or under Preferred Risk's family policy; (3) whether the two insurance companies should share responsibility on a pro rata basis; and (4) if INA is primarily responsible for payment of uninsured motorist benefits, whether INA is entitled to a set-off for amounts paid to Peavy as workers compensation benefits.

Pursuant to the dictates of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), this court applies the law of the State of Mississippi to this dispute before the court under diversity jurisdiction. No party disagrees with this choice of law.

## BACKGROUND

On January 22, 1987, Peavy was employed by Bordens, Inc., driving a 1969 International truck and acting within the scope of his employment when he collided with an uninsured vehicle. According to the stipulation of the parties, Peavy's injuries, though serious, will not exceed the amount of $1,000,000.00. The Bordens, Inc., truck Peavy was driving was insured by the Insurance Company of North America. Peavy insured his personal automobile with Preferred Risk.

Under the uninsured motorist provisions of the Preferred Risk policy, Peavy was paid $10,000.00 for the injuries he sustained in the accident. Thereafter, Preferred Risk learned that Bordens, Inc., was covered by INA and that INA also had offered Peavy $10,000.00 in accordance with the uninsured motorist provisions its policy. Preferred Risk then obtained an assignment of rights from Shelton Peavy and brought this declaratory action to recover the $10,000.00 paid to Peavy, contending that INA, not Preferred Risk, bore the primary responsibility for paying Peavy the minimum uninsured motorist benefits required by Mississippi law ($10,000.00).[3]

Preferred Risk asserts that since Peavy was driving Bordens' truck and not his own automobile when the accident occurred, Peavy should be required to look first to INA's policy, which will cover all of his injuries. This is so, according to Preferred Risk, because Mississippi law permits Peavy to aggregate or "stack" the multiple uninsured motorist coverages pertaining to all Bordens, Inc., trucks insured by the INA policy. Inasmuch as the INA policy covers up to 7000

---

**3.** MCA § 83–11–101 (Supp.1990) provides in pertinent part:

(1) No automobile liability insurance policy or contract shall be issued or delivered ..., unless it contains an endorsement undertaking to pay the insured all sums which he shall be legally entitled to recover as damages for bodily injury or death from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than those set forth in the Mississippi Motor Vehicle Safety Responsibility Law, as amended, ... (MCA § 63–15–1 et seq.)

MCA § 63–15–3(j) provides:

"Proof of financial responsibility" means proof of the ability to respond in damages for liability, on account of accidents ..., arising out of the ownership, maintenance or use of a motor vehicle, in the amount of ten thousand dollars ($10,000.00) because of the bodily injury or death of one (1) person in any (1) one accident, and subject to said limit for one (1) person, in the amount of twenty thousand dollars ($20,000.00) because of bodily injury to or death of two (2) or more persons in any one (1) accident, and in the amount of five thousand dollars ($5000.00) because of injury to or destruction of property of others in any one (1) accident.

trucks and the parties agree that Peavy's damages will not exceed $1,000,000.00, Preferred Risk contends that there is sufficient coverage under the INA policy for the whole of Peavy's injuries.[4]

INA responds that it would be unconscionable and unreasonable to permit stacking of the multiple coverages under its commercial fleet policy. In effect, says INA, stacking would amount to punishment of Bordens, Inc., for permitting its employees the optional benefit of $10,000.00 in uninsured motorist coverage. According to INA, the more appropriate approach would be to stack any multiple coverage Peavy may be entitled to under his Preferred Risk policy and to require that INA and Preferred Risk be responsible for Peavy's injuries on a pro rata basis.

Finally, in the event the court finds that INA's liability exceeds $10,000.00 by any amount, INA contends that it should be permitted to set-off any and all amounts of workers' compensation benefits paid to Peavy[5] by Bordens, Inc. The sum in question amounts to $28,241.25, plus the additional compensation amounts paid since March 28, 1989. Peavy challenges this contention, arguing that reduction of his uninsured motorist benefits would be improper.

### PRIMARY COVERAGE/EXCESS COVERAGE

The Preferred Risk policy contains two "Other Insurance" clauses which provide that coverage under the policy will be excess over any other collectible automobile insurance. The first of these clauses applies to medical payments coverage and provides:

> "If there is other applicable insurance we will pay only our share of the loss. Our share is the proportion that our limit bears

to the total of all applicable limits. However, *any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance* providing payments for medical expenses or funeral expenses.... (Part B of the Preferred Risk policy, page 7)

The second clause applies to uninsured motorist coverage and provides:

> If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, *any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.* (Part C of the Preferred Risk policy, page 10)

According to Preferred Risk, both of these contractual clauses require Peavy to look first to INA for coverage inasmuch as this was the policy covering the vehicle in which Peavy was riding at the time of the accident. Preferred Risk says that Peavy may resort to the Preferred Risk policy only if INA's coverage is insufficient to address all of Peavy's injuries.

Preferred Risk cites the court to the case of *Mississippi Farm Bureau Mutual Insurance Co. v. Garrett*, 487 So.2d 1320 (Miss. 1986). *Garrett* involved an "other insurance" provision in a policy between Mississippi Farm Bureau Policy and Garrett relative to his three private automobiles. The Farm Bureau argued that Garrett, a passenger in an automobile struck by an uninsured motorist, was compelled by the language of the "other insurance" provision in its policy first to seek uninsured motorist benefits under the policy covering the automobile in which

---

4. MCA § 83–11–101 (Supp.1990) provides that, "at the option of the insured, the uninsured motorist limits may be increased to limits not to exceed those provided in the policy of bodily injury liability insurance of the insured or such lesser limits as the insured elects to carry over the minimum requirement set forth by this section."

 INA submits that if the court permits stacking, then pursuant to this statutory provision, INA's multiple coverage policy may not be aggregated

in any amount exceeding $1,000,000.00 since this is the limit of the INA policy for liability insurance coverage. The other parties agree with this submission.

5. Shelton Peavy has received Workers' Compensation benefits from Bordens, Inc. in the amount of $13,581.25 in medical benefits, $14,660.00 in compensation payments, and $140.00 per week in additional compensation benefits since March 28, 1989.

he was riding.[6] The driver of the accident vehicle was covered by an insurance contract with Dairyland Insurance Company. The Dairyland policy provided coverage in the amount of $10,000.00 and the insured settled his claim with Dairyland for $7,517.00. Farm Bureau also argued that its insured, Garrett, was barred from seeking any part of the $10,000.00 coverage provided by the Farm Bureau policy because Garrett had settled with Dairyland for less than the policy maximum, and thus had not exhausted the Dairyland coverage "available" to him as required under the "other insurance" provision.

The Mississippi Supreme Court agreed that the language of the Farm Bureau's "other insurance" provision required the insured first to seek coverage from the policy covering the automobile in which he was riding. *Mississippi Farm Bureau Mutual Insurance Co. v. Garrett, supra,* at page 1323. The Court also found that the insured could take the $7,517.00 settlement and look to Farm Bureau for the difference between the settlement amount and the total amount of coverage ($10,000.00) provided in the Farm Bureau policy.

Unpersuaded by the holding in *Garrett,* INA contends that the parties should share the responsibility for Peavy's injuries on a *pro rata* basis, citing the case of *Harthcock v. State Farm Mutual Automobile Insurance Co.,* 248 So.2d 456, 461 (Miss.1971). *Harthcock* involved two insurers who argued that they each were absolved from responsibility for payment of uninsured motorist benefits. The plaintiff was injured while riding a motorcycle driven by one James P. Horne and owned by Lonzo L. Horne. The motorcycle was struck by an inadequately insured motorist, one Gary Roark. The plaintiff suffered bodily injury and related expenses of $14,500.00 and received a $4,500.00 settlement from Gary Roark's insurance company. Roark's policy provided compensation for

bodily injury up to the policy limit of $5,000.00. The plaintiff's husband was insured by State Farm Mutual Insurance Company. Lonzo L. Horne's motorcycle was insured through Universal Underwriter's Insurance Company. The plaintiff filed suit against each insurer separately for uninsured motorist coverage, alleging the negligence of James P. Horne in both actions. The plaintiff's lawsuits were consolidated for trial.

The two insurers argued that they were absolved from liability since Gary Roark carried bodily injury coverage in the same amount as the minimum required by the Mississippi Vehicle Safety Responsibility Act in effect at that time.[7]

The Mississippi Supreme Court held that nothing in the insurance policy of Gary Roark precluded the application of other uninsured motorist coverage. Additionally, the Court addressed the "other insurance" provision of the policy covering plaintiff's husband and the "no release without consent" provision of Lonzo Horne's motorcycle policy. Both provisions were ruled void insofar as they cut down on the amount of coverage the insured was entitled to receive under Mississippi's uninsured motorist law ($10,000.00). The Court said nothing concerning any *pro rata* responsibility for the insured's damages. Moreover, it was apparent from the amount of damages the insured incurred, $14,500.00, and the amount of her settlement, $4,500.00, that the entire amount of uninsured motorist coverage offered by both policies, $10,000.00, would be exhausted by the insured's claim. Therefore, the question of which insurer should first respond with payment of benefits was moot. This court finds that the *Harthcock* case does not mandate *pro rata* sharing of responsibility as urged by INA.

The *Garrett* case cited by Preferred Risk found that an insured first must

---

**6.** The Farm Bureau policy provided in pertinent part:

 With respect to bodily injury or property damage sustained by an insured while occupying or being struck by an automobile not owned by the principal named insured, the insurance under this endorsement shall apply *only as excess insurance* over any other similar

insurance available to each insured and applicable to such automobile as primary insurance, ...

**7.** The previous version of MCA § 63–15–3(j) required that one be able to respond in damages in the minimum amount of $5,000.00 for bodily injury.

seek insurance coverage, if any, from the policy covering the unowned automobile in which an insured was riding at the time of an accident before resorting to the benefits of the insured's own policy. This decision was based upon the language of the policy in question in *Garrett*, not upon any fast principle of Mississippi law. As previously noted, the Preferred Risk policy in question clearly provides only excess coverage with regard to unowned vehicles in which an insured may be injured. Inasmuch as Mississippi law holds that no rule of construction will permit this court to make a contract differing from that made by the parties themselves, or to enlarge an insurance company's obligations where the provisions of its policy are clear, *Foreman v. Continental Casualty Company*, 770 F.2d 487, 489 (5th Cir.1985); *State Automobile Mutual Insurance Company of Columbus, Ohio v. Glover*, 176 So.2d 256, 268 (Miss.1965)., this court finds that Preferred Risk would incur liability pursuant to the provisions of its policy only as a provider of *excess* coverage and is not required to share *pro rata* responsibility for Peavy's injuries.

The INA policy would provide up to $1,000,000.00 in uninsured motorist benefits if stacking of multiple coverage is permitted. The parties have agreed that Peavy's injuries will not exceed this amount. Consequently, if stacking of the INA uninsured motorist coverages is allowed, Preferred Risk is unlikely to incur any liability under the circumstances. Obviously, having determined that INA is the primary carrier, while Preferred Risk is but the excess carrier, the court is behooved now to address the question of stacking in the INA policy.

### THE MATTER OF STACKING

■ In *Wickline v. U.S. Fidelity & Guaranty Co.*, 530 So.2d 708 (Miss.1988), the Mississippi Supreme Court stated:

> Stacking is firmly embedded in our uninsured motorist law. The sort of stacking here sought, i.e., stacking multiple coverage within a single policy, has been mandated in *Brown*,[8] *Pearthree*[9] and *Hartford*

*Accident & Indemnity Company v. Bridges*, 350 So.2d 1379 (Miss.1977). *See also St. Arnaud v. Allstate Insurance Co.*, 501 F.Supp. 192 (S.D.Miss.1980). As with other types of stacking, the rationale offered is that multiple premiums are paid and multiple (stacked) coverages should be available. However, what is important is the fact that stacking has become a positive gloss upon our Uninsured Motorist Act.

*Wickline v. U.S.F. & G., supra*, at page 714.

INA initially argued that the Mississippi Supreme Court had never permitted stacking of multiple coverage under a commercial fleet policy. However, in the case of *Harris v. Magee*, 573 So.2d 646 (Miss.1990), rehearing denied, January 23, 1991, the Court held that the Mississippi statutory scheme did not distinguish a "commercial fleet policy" from any other type of auto insurance policy. The court refused to accord different treatment to the commercial fleet policy in question in *Harris v. Magee, supra*. In keeping with its previous observances on the matter, the Court stated that Mississippi's Uninsured Motorist Act must be construed liberally to provide coverage. *Cossit v. Nationwide Mutual Insurance Co.*, 551 So.2d 879 (Miss. 1989); *Washington v. Georgia American Insurance Company*, 540 So.2d 22, 25 (Miss. 1989); *Wickline v. U.S.F. & G.*, 530 So.2d 708 (Miss.1988); *Mississippi Farm Bureau Mutual Insurance Co. v. Garrett*, 487 So.2d 1320 (Miss.1986); *Stevens v. U.S.F. & G. Co.*, 345 So.2d 1041 (Miss.1977). The *Harris* Court explained its reluctance to construe a commercial fleet policy differently from any other policy:

> This Court has observed that the Uninsured Motorist Act must be "construed liberally to provide coverage and strictly to avoid or preclude exceptions or exemptions from coverage." *Mississippi Farm Bureau Mutual Insurance Company v. Garrett*, 487 So.2d 1320, 1323 (Miss.1986). To jurisprudentially designate Steel's policy a "large, commercial fleet policy" for the purpose of aligning our views on stacking with those jurisdictions which have pre-

---

8. *Government Employees Insurance Co. v. Brown*, 446 So.2d 1002 (Miss.1984).

9. *Pearthree v. Hartford Accident & Indemnity Co.*, 373 So.2d 267 (Miss.1979).

cluded stacking under these type policies, would create, rather than preclude, an "exception from coverage." Such a construction is foreign to our UM statute. As we recognized in *Wickline,* we are bound by our statute, not the jurisprudence of foreign jurisdictions.

*Harris v. Magee, supra,* at pages 654–55.

Therefore, in view of the Mississippi Supreme Court's pronouncement, this court finds that Shelton Peavy may stack the multiple uninsured motorist coverage provided under the Bordens, Inc./INA insurance policy.

## OFFSET OF WORKERS' COMPENSATION BENEFITS

### *INA's Argument Under Porter v. Shelter Insurance Co.*

INA contends that it should be permitted to offset the amount of workers' compensation benefits paid to Peavy from any amount of uninsured motorist coverage in excess of the statutory minimum requirement ($10,-000.00) under Mississippi law. *See* MCA § 63–15–3(j); *Porter v. Shelter Ins. Co.,* 678 F.Supp. 151 (S.D.Miss.1988). In *Porter v. Shelter,* the Court referred to MCA § 83–11–111 (Supp.1990) which provides:

Any policy which grants the coverage required for motor vehicle liability insurance may also grant any lawful coverage in excess of, or in addition to, the coverage specified for a motor vehicle liability policy, and the excess or additional coverage shall not be subject to the provisions of this article, except as otherwise provided . . .

The Court concluded that Mississippi law protected only the minimum benefits required by statute from offset. Any amount in excess of the minimum was subject to offset.

The *Porter* Court relied upon the pronouncement of the Mississippi Supreme Court in *Talbot v. State Farm Automobile Insurance Company,* 291 So.2d 699 (Miss. 1974). The insurer in *Talbot* included in its policy a "limits of liability" provision regarding uninsured motorist benefits. The provision stated that the insurer would not be liable under the uninsured motorist provision of the policy for any amount in excess of the minimum amount required by law. However, the insured had more than one automobile covered by the policy in question. A premium was paid for the coverage of each automobile. The Mississippi Supreme Court was divided on the question of whether the policy permitted the insured to collect uninsured motorist benefits for every automobile covered, or whether the insured's coverage was limited to just the automobile in which he was riding at the time of the accident. In a 5–4 decision, the Court held that there was no requirement under MCA § 83–11–101 for uninsured motorist coverage to exceed the minimum amount specified by statute. Moreover, said the Court, amounts in excess of the minimum amount required are not subject to the provisions of the statute. MCA § 83–11–111. Therefore, the "limits of liability" provision in the insured's policy was found not to conflict with Mississippi uninsured motorist law since the minimum amount of benefits required by statute was provided.

However, Justice Vernon Broom wrote a prophetic dissenting opinion in *Talbot,* arguing that the insured had paid for plural coverages and should be permitted to enjoy coverage under the uninsured motorist provision pertaining to each of his automobiles. This rationale was later adopted by the Mississippi Supreme Court in the case of *Government Employees Insurance Company v. Brown,* 446 So.2d 1002 (Miss.1984). The Court there held that recovery of uninsured motorist benefits cannot be limited by an insurer where an insured has paid a premium for multiple (or plural) coverage, notwithstanding clear and unambiguous language of such an attempted limitation by the insurer. *Id.* at page 1006. Any language, said the Court, attempting to limit an insurer's liability must fail when it deprives the insured of benefits for which a premium was paid. The *Talbot* rationale was abandoned to the extent that it permitted an insurer to limit its uninsured motorist liability to the statutory minimum.

The district court in *Porter v. Shelter* concluded that uninsured motorist benefits in excess of the statutory minimum requirement could be offset by the amounts of workers' compensation paid to an insured. The court reasoned that the *Talbot* case permitted a limitation of liability so long as the limitation did not deny the insured the minimum amount of benefits required by law. However, the Mississippi Supreme Court's decision in *Government Employees Insurance Co. v. Brown, supra,* holds that an insured is entitled to all benefits for which a premium is paid, not just to a statutory minimum. In other words, the insured may stack the minimum liability of all uninsured motorists coverage for which a premium has been paid. *Thiac v. State Farm Automobile Insurance Co.,* 569 So.2d 1217 (Miss.1990); *Cossitt v. Nationwide Mutual Insurance Co.,* 551 So.2d 879 (Miss.1989); *Brown v. Maryland Casualty Co.,* 521 So.2d 854 (Miss.1987); *State Farm Mutual Automobile Insurance Co. v. Kuehling,* 475 So.2d 1159 (Miss.1985), and *Government Employees Insurance Co. v. Brown, supra.* The theory of these cases without exception has been that insurer and insured have entered two or more contracts covering the same eventuality and that the insured may enforce these contracts according to their terms. *In re Koestler for the Benefit of Koestler,* 608 So.2d 1258, 1261 (Miss.1992). Therefore, Shelton Peavy, as an insured under the INA policies for the purpose of uninsured motorist coverage may stack the minimum coverage of all the policies up to the contract limit of $1,000,000.00.

In the case *sub judice,* the parties have stipulated that Shelton Peavy's injuries, though serious, will not exceed the amount of $1,000,000.00. This amount does not exceed the total amount of uninsured motorist coverage available to Peavy when stacking of the Bordens, Inc.'s policies is permitted. The Mississippi Supreme Court's ruling in *Government Employees Insurance Co. v. Brown, supra,* does not permit an insurer to impose limitations on the amount of uninsured motorist coverage for which a premium has been paid. INA's attempt to offset the amounts Peavy has been paid in workers compensation would operate as a limitation of the total amount to which Peavy is entitled under Mississippi law. Therefore, the court finds that such offset should not be permitted.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Insurance Company of North America provides primary coverage for the injuries sustained by Shelton Peavy; that Shelton Peavy may aggregate or "stack" the uninsured motorist benefits provided for the vehicles of Peavy's employer, Bordens, Inc.; that Preferred Risk Insurance Company is not required to share responsibility for Shelton Peavy's injuries on a pro rata basis with Insurance Company of North America; and that Insurance Company of North America may not offset the uninsured motorist benefits provided through its policy by the amounts received by Shelton Peavy as workers' compensation.

The court thus finds for Preferred Risk and against INA. Accordingly, Preferred Risk is entitled to recover from INA the $10,000.00 paid to Peavey by Preferred Risk. Preferred Risk is also entitled to its costs. A separate judgment of dismissal will be entered in accordance with the local rules.

**SO ORDERED AND ADJUDGED.**