## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 97-CA-00628-SCT

*WILLIE JOHNSON, A MINOR, BY AND THROUGH
JANETTE BLOCKET, HIS MOTHER*

*v.*

*UNITED STATES FIDELITY & GUARANTY
INSURANCE COMPANY AND TEMECCA WALKER*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/15/97 |
| TRIAL JUDGE: | HON. ELZY JONATHAN SMITH, JR. |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ELLIS TURNAGE |
| ATTORNEY FOR APPELLEES: | THOMAS B. JANOUSH |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 11/12/1998 |
| MOTION FOR REHEARING FILED: | 11/30/98 |
| MANDATE ISSUED: | 3/3/99 |

**BEFORE PRATHER, C.J., BANKS AND McRAE, JJ.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

### STATEMENT OF THE FACTS AND CASE

¶1. On December 12, 1988, six-year old Willie Johnson was struck by an uninsured motorist while he was walking from his home to board a parked school bus 141 feet away. The uninsured vehicle was driven by Tamecca Walker ("Walker"), who proceeded through an intersection in spite of the presence of the parked school bus with its stop sign and lights displayed. Johnson suffered severe bodily injuries, including a broken pelvis, as a result of the accident. On November 30, 1994, Johnson filed a complaint against Walker and USF&G, the UM carrier for the school bus. The trial court granted USF&G's motion for summary judgment, finding that Johnson had not been occupying the school bus at the time of the accident and was thus not entitled to UM benefits. Johnson appeals to this Court.

### ISSUE

**Whether the term "occupying" contained in policy number 3202 VAL 200475-01-9 is**

**ambiguous and should be construed in favor of Willie Johnson to find coverage inasmuch as the policy term "occupying" is susceptible to varying reasonable interpretations?**

¶2. The present appeal centers solely around a question of law as to whether Johnson was an "insured" entitled to UM benefits under the facts of the present case. This Court has made it clear that, in order to be considered an "insured," an injured party must meet the definition of this term set forth *either* in the policy *or* in the UM Act. *See: Harris v. Magee*, 573 So.2d 646 (Miss. 1990). The USF&G policy in the present case defines an insured, in part, as anyone "occupying" a covered auto, and the term "occupying" is defined as "in, upon, getting in, on, out or off" the covered auto. Johnson argues that he was "occupying" the bus within the policy definition of the term, given that he was in the process of "getting on" the bus at the time of the accident.

¶3. Johnson need not meet the definition of "insured" under the USF&G policy, however, if he meets the definition of this term set forth in the Uninsured Motorist (UM) Act. Miss. Code Ann. § 83-11-103(b) (1991) defines an "insured" as follows:

> The term `insured' shall mean the named insured and, while a resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses, with the consent, expressed or implied of the named insured, the motor vehicle to which the policy applies and a guest in such motor vehicle to which the policy applies, or the personal representative of any of the above.

The statute thus grants "insured" status to any party who "uses" the covered vehicle with the consent of the named insured. This Court has, in prior cases, set forth a very liberal interpretation of "using" a vehicle, and this interpretation has even included actions taken outside of the vehicle itself.

¶4. In *Stevens v. United State Fidelity & Guaranty Co.*, 345 So.2d 1041 (Miss. 1977), this Court considered whether a tow truck driver who had left his truck to sweep away glass from the highway was "using" the vehicle for purposes of the UM act. Emphasizing that the provisions of the UM act are to be liberally construed in favor of recovery, this Court held that the driver was in fact "using" the truck within the meaning of the UM act, thus entitling the driver to UM benefits for injuries he sustained when he was struck by a car while sweeping the glass[1]. *Stevens*, 345 So.2d at 1044.

¶5. Another case on point is *Harris v. Magee*, 573 So.2d 646 (Miss. 1990). In *Harris*, this Court held that a truck driver (Magee) who had left his truck to help repair a crane that he was escorting was "using" the truck and was thus a UM insured within the meaning of the UM act. This Court initially noted in *Harris* that Magee was not an "insured" under the terms of the policy, which restricted the definition of "insured" to the named insured, family members, and anyone else "occupying" a covered auto. *Harris*, 573 So.2d at 650. This Court held, however, that:

> Only if the statutory definition of `insured' were disregarded would Travelers have been entitled to a directed verdict. ... It is uncontradicted that Larry used the truck to accompany his workers to job sites. It is undisputed that directing and assisting his co-employees in repairing a disabled vehicle that was crucial to the performance of their job was a necessary part of Larry's duties as a foreman ... Stopping to repair the crane was a necessary aspect of the truck's operation. The evidence presented conclusively indicates that the truck was being used by Larry and his crew to repair the crane.

*Id.* at 650-51. This Court in *Stevens* and *Harris* thus set forth a very liberal interpretation of "using" a vehicle, and this fact is very significant in the present legal context. This Court is not faced with a clean judicial slate on this issue but must rather decide whether there is a valid basis for distinguishing the injuries suffered by Johnson while walking to his school bus from the injuries suffered by Stevens and Magee while they were outside of their vehicles.

¶6. The most obvious distinction, and the one raised by USF&G, is that Stevens and Magee had both been previously using their vehicles, while Johnson was preparing to board the school bus for the first time that day. This Court finds this distinction to be of limited validity, however. There is no apparent reason why a differing standard should apply to injuries suffered while preparing to board a bus for the first time than to injuries suffered while preparing to re-board a bus. In light of this Court's holdings in *Stevens* and *Harris*, there is little doubt that Johnson would have been deemed to have been "using" the bus if, for some reason, he had been forced to briefly exit the bus and been injured while returning to it.

¶7. Moreover, it is certainly arguable that Johnson was "using" the school bus in the present case to a greater extent than Magee was "using" his truck while he was repairing the crane which he was escorting in *Harris*. Johnson was 141 feet away from the school bus, but all indications are that he was walking to the bus in order to ride it to school, and his actions were thus directed towards the vehicle itself. In the ordinary sense of the word "use," neither Johnson, Magee, nor Stevens might be considered to have been "using" the vehicles in their respective cases, but it is clear that "use" is a legal term of art with a broad definition in this context. This Court has elected to interpret this term very broadly in light of the beneficent purposes of the UM act. The issue in UM cases is the extent to which a party injured by the negligence of others is entitled to be compensated for these injuries, and this fact has shaped this Court's decisions in this area of the law.

¶8. The primary basis on which cases such as *Stevens* and *Harris* might be distinguished from cases such as the present one relates to the difficulty of proving the planned use of the insured vehicle. In *Stevens* and *Harris*, the drivers had briefly stopped and exited their vehicles, and there was little doubt that they had been driving their vehicles or that they would resume doing so in the near future. In cases in which there is no prior use of the vehicle, however, it may be more difficult to establish the true facts in this regard. A pedestrian struck by an uninsured motorist, for example, could argue that he was preparing to board an insured bus or taxi nearby and that he should thus enjoy the benefits of the UM coverage applicable to these vehicles.

¶9. The Courts should be cognizant of the possibility of fraud in this regard, and a liberal construction of the UM act should not lead to a finding that UM coverage applies absent proof that an insured was preparing to board an insured vehicle. In the present case, there is every reason to believe that Johnson was in fact preparing to board his bus, given that he customarily boarded the bus on the way to school. The policy considerations underlying this Court's decisions in *Stevens* and *Harris* are equally applicable to the present case, and there is no difficulty in establishing the planned use of the vehicle under the facts herein.

¶10. One difficulty which might arise in future cases is the establishment of parameters for the scope of the term "use." Clearly, not all preparations to board a covered vehicle, no matter how remote, should be held to constitute "use" of the vehicle in question. Nevertheless, the courts are fully capable of establishing reasonable parameters in this regard, and the difficulty of proving use of a covered vehicle in some cases should not lead this Court to draw artificial and arbitrary distinctions in all cases. This Court concludes that the actions of Johnson in the present case fall within the scope of the term "use" as set forth by prior

decisions of this Court, and the ruling of the trial court is accordingly reversed and remanded for further proceedings consistent with this opinion.

¶11. **REVERSED AND REMANDED.**

**PITTMAN, P.J., BANKS, McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR. SULLIVAN, P.J., CONCURS IN RESULT ONLY.**

1. Johnson also cites *Cossitt v. Nationwide Mutual Insurance Company*, 551 So.2d 879 (Miss. 1989), which involved bus passengers who had been injured after they had alighted from the bus in order to "answer a call of nature." *Cossitt*, 551 So.2d at 881. It was not necessary for this Court to address the issue of whether the passengers had been "occupying" or "using" the bus, given that counsel for Nationwide had conceded the point based on this Court's holding in *Stevens*. This Court in *Cossitt* thus issued no holding in this regard, and *Cossitt* thus does not constitute precedential authority on this issue. Similarly without precedential value is this Court's recent decision in *Radmann v. Truck Insurance Exchange*, 660 So.2d 975 (Miss. 1995), which interpreted Wisconsin rather than Mississippi law.