# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-00999-SCT

*JAYNE GLENNON AND MARILYN B. LASHLEY*

*v.*

*STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 5/17/2000 |
| TRIAL JUDGE: | HON. DALE HARKEY |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | SKIP EDWARD LYNCH |
| | WILLIAM HARVEY BARTON |
| ATTORNEYS FOR APPELLEE: | SCOTT CORLEW |
| | JOHN A. BANAHAN |
| NATURE OF THE CASE: | CIVIL-INSURANCE |
| DISPOSITION: | AFFIRMED-01/17/2002 |
| MOTION FOR REHEARING FILED: | 2/1/2002; denied 4/11/2002 |
| MANDATE ISSUED: | 4/18/2002 |

**EN BANC.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. Jayne Glennon and Marilyn B. Lashley were injured while driving to their job site in a vehicle owned by their employer, Rent-A-Maid. Glennon and Lashley each filed a complaint seeking declaratory judgment in the County Court of Jackson County, Mississippi, against State Farm Mutual Automobile Insurance Company (State Farm), alleging that they were entitled to stack the uninsured motorist (UM) coverage of Rent-A-Maid's three vehicles. The two complaints were later consolidated. Glennon and Lashley then filed a motion for partial summary judgment on the issue of stacking and State Farm filed its cross motion for summary judgment on the same issue. The county court granted summary judgment in favor of State Farm, holding that Glennon and Lashley met the definition of "insureds"only for the vehicle actually involved in the accident. Since they were not "insureds" for the other two vehicles owned by Rent-A-Maid and insured by State Farm that were not involved in the accident, they could not stack the UM coverage of those vehicles. Glennon and Lashley appealed to the Jackson County Circuit Court, and the circuit court affirmed the county court's decision. Aggrieved by the circuit court's decision, Glennon and Lashley timely filed their notice of appeal raising the following two issues:

> **I. CAN AN EMPLOYEE WHO WAS INJURED WHILE DRIVING HER EMPLOYER'S AUTOMOBILE ON COMPANY BUSINESS STACK HER EMPLOYER'S UNINSURED MOTORIST COVERAGE?**

**II. IS A PERMISSIVE USER CONSIDERED A CLASS I INSURED GIVING HIM THE RIGHT TO STACK?**

Finding no error in the circuit court's judgment, we affirm.

## FACTS

¶2. On August 9, 1995, Casey York fell asleep while behind the wheel of his vehicle and struck a 1988 Isuzu owned by Rent-A-Maid. The Isuzu was occupied by Jayne Glennon and Marilyn Lashley, two Rent-A-Maid employees traveling to a job site. Both employees suffered serious injuries, with Glennon having incurred more than $ 15,000 in medical bills and Lashley more than $30,000 in medical bills by the time of the circuit court hearing, in addition to lost wages.

¶3. At the time of the accident, York had liability insurance in the amount of $25,000 per person. Glennon and Lashley were each covered by their own personal UM policies in the amount of $10,000 each. Rent-a-Maid, through State Farm, had UM coverage in the amount of $25,000 per person, for the accident vehicle. There were two other similar State Farm policies for two other vehicles owned by Rent-A-Maid.

¶4. Soon after the accident, York tendered the full amount of his liability coverage, $25,000 each to Glennon and Lashley. Glennon and Lashley each received $10,000 from their respective personal UM providers. State Farm tendered $10,000[1] to each of them as well, as UM coverage for the accident vehicle, but refused to stack the coverage of the two non-accident vehicles.

## STANDARD OF REVIEW

¶5. Upon review of the grant of summary judgment by a trial court, this Court employs a de novo standard of review. *Travis v. Stewart*, 680 So.2d 214, 216 (Miss. 1996). The proponent of a summary judgment bears the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. M.R.C.P. 56(c); *Collier v. Trustmark Nat'l Bank*, 678 So.2d 693, 696 (Miss. 1996). The non-movant may not defeat the motion merely by responding with general allegations, but must set forth in an affidavit or otherwise, specific facts showing that issues exist which necessitate a trial. *Drummond v. Buckley*, 627 So.2d 264, 267 (Miss. 1993). After viewing evidentiary matters in a light most favorable to the nonmoving party, this Court can only reverse the decision of the trial court if triable issues of fact exist. *Travis*, 680 So.2d at 216.

## ANALYSIS

**I. CAN AN EMPLOYEE WHO WAS INJURED WHILE DRIVING HER EMPLOYER'S AUTOMOBILE ON COMPANY BUSINESS STACK HER EMPLOYER'S UNINSURED MOTORIST COVERAGE?**

¶6. The main argument of Glennon and Laskey is that this Court has created a subclass within UM Class II insureds; namely, employees driving company vehicles. They claim that this Court has never disallowed stacking by a Class II employee. State Farm responds that the decisive factor is whether the UM coverage for the separate vehicles is on one or multiple policies. State Farm argues that this Court has never allowed a Class II insured, employee or otherwise, to stack the UM coverage from multiple policies of the named insured.

¶7. A review of this Court's uninsured motorist cases reveals that coverage was first created in 1956 by the automobile insurance industry in an effort to alleviate some of the problems being created by an increasing number of uninsured motorists. *Rampy v. State Farm Mut. Auto. Ins. Co.*, 278 So.2d 428, 431-32 (Miss. 1973). A decade later, the Mississippi Uninsured Motorist Act was enacted, mandating that all insurance policies issued after January 1, 1967, must include UM coverage, unless specifically rejected by the insured in writing. Miss. Code Ann. §§ 83-11-101 to -111(1999). A 1980 amendment to the Act added the concept of underinsured motor vehicles to the definition of "uninsured motor vehicle." Miss. Code Ann. § 83-11-103(c)(iii)(1999). An underinsured vehicle is one in which the "liability insurer of such vehicle has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under his uninsured motorist coverage." *Id.*

¶8. This Court has long recognized the remedial purpose of the UM Act and has stated that it "must be construed in light of the purpose and policy of the statute . . . [it was] enacted for the benefit of injured persons traveling on the public highways . . . to give the same protection to the person injured by an uninsured motorist as he would have had if he had been injured in an accident caused by an automobile covered by a standard liability policy." *Rampy*, 278 So.2d at 432. "Such provisions are to be liberally construed to accomplish such purpose." *Id.* To further this stated purpose, the idea of allowing an injured party to stack UM policies in order to obtain complete restitution emerged.

¶9. In 1971, this Court first permitted stacking of UM policies, holding that "the uninsured motorists coverage of each policy is available to the injured insured until all sums which he shall be entitled to recover from the uninsured motorist have been recovered." *Harthcock v. State Farm Mut. Auto. Ins. Co.*, 248 So.2d 456, 461-62 (Miss.1971). However, this Court soon noted that the "statute creates two distinct classes of insureds with different coverage accruing to each class." *Stevens v. United States Fid. & Guar. Co.*, 345 So.2d 1041, 1043 (Miss. 1977). Class I insureds include the person named on the policy, that person's spouse, and while residents of the same household, relatives of either. *Id*. Class II insureds include guest passengers and permissive users. *Id*.

¶10. Initially, stacking was only available to Class I insureds, but later this Court allowed a Class II insured to stack coverage under a standard family UM policy, where there had been two premiums paid on two vehicles, under a single policy. *Brown v. Maryland Cas. Co.*, 521 So.2d 854, 856-57 (Miss. 1987). The next year, this Court permitted the wrongful death beneficiaries of a Class II insured to stack benefits where four premiums were paid under a single policy covering the accident vehicle and three other vehicles. *Wickline v. United States Fid. & Guar. Co.*, 530 So.2d 708, 714 (Miss. 1988). One year later, this Court allowed three Class II insureds (where one was an employee) to stack a commercial UM coverage, where the church had paid three premiums for their three buses on a single policy. *Cossitt v. Nationwide Mut. Ins. Co.*, 551 So.2d 879, 884 (Miss. 1989). The following year, this Court went against the almost unanimous voice of all other jurisdictions and allowed a Class II insured employee to stack the coverage on all twenty-two vehicles contained in his employer's single commercial fleet policy. *Harris v. Magee*, 573 So.2d 646, 652 (Miss. 1990).

¶11. Two years later, this Court restricted the use of stacking by Class II insureds in *State Farm Mut. Auto. Ins. Co. v. Davis*, 613 So.2d 1179 (Miss. 1992). The lower court had permitted a Class II insured to stack the UM coverage from the accident vehicle with the UM coverage of another vehicle owned by the same person, even though the second vehicle was covered on a separate policy. *Id*. at 1179. In a 7-1 decision, this Court reversed and rendered judgment in favor of the insurer, holding that Class II insureds

are only entitled to UM benefits "from their own policies and/or the **policy** covering the accident vehicle." *Id.* at 1179-80 (emphasis added). Justice Pittman, writing for the majority, distinguished the *Wickline* decision by noting that in *Wickline* all the cars were covered under the same policy, while in "the case at hand, the . . . cars are all covered under separate policies." *Id.* at 1182.

¶12. The dissent argues that "Class distinctions are not provided for under the UM statute." With all due respect, while this is literally true, a plain reading of the statute reveals this is substantively incorrect. Even though the terms "Class I" and "Class II" do not actually appear in the statute, the statute clearly delineates two different "classes" of insureds:

> The term "insured" shall mean the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, **while in a motor vehicle or otherwise**, and any person who uses, with the consent, expressed or implied, of the named insured, **the motor vehicle to which the policy applies**, and a guest **in such motor vehicle to which the policy applies**, or the personal representative of any of the above.

Miss. Code Ann. § 83-11-103(b)(1999)(emphasis added). It is important to note that the first part of the definition refers to "A" motor vehicle while the latter part refers to "THE" motor vehicle to which the policy applies. Further, the operative phrase, "or otherwise," means that a Class I insured is covered whether in an automobile or not. The Class I insured is covered in any automobile, as a pedestrian, or even in the bathtub- if an uninsured motorist came flying through the window and caused an injury. In contrast, there is no "or otherwise" phrase modifying the Class II insured clause. As such, a Class II insured-often called a "permissive user" or "guest passenger"-is only covered because he or she is in the covered automobile.

¶13. The dissent further argues that: "Class status is irrelevant to the issue of UM coverage . . . ." With all due respect, this is simply a misstatement of the case law**.** While admittedly *Wickline* and *Cossitt* did somewhat blur the distinction between Class I and Class II insureds, subsequent decisions have clearly reestablished that these classifications are firmly embedded in our law and are the basis for determining the rights/remedies of injured parties and the liabilities of insurance companies. This Court has long recognized that the plain language of the statute creates these two classifications of insureds:

> The statute creates two distinct classes of insureds with different coverage accruing to each class. The first class consists of the named insured, and residents of the same household, his spouse and relatives of either. Their coverage against injury inflicted by uninsured motorists is quite liberal, extending to all circumstances when a member of the first class is injured by an uninsured motorist. This broad protection to members of the first class arises by virtue of the phrase 'while in a motor vehicle or otherwise.' The second class consists of any person 'who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies.'

*Stevens*, 345 So.2d at 1043. We somewhat blurred this distinction when "this Court looked too much to the decisions of other states,. . . and too little to the language of the Mississippi statute." *Wickline*, 530 So.2d at 714 (internal citations omitted). However, only two years later this Court reaffirmed this class distinction:

> Linda, as cross-appellant, argues that Larry was a "named insured" and therefore, a Class I insured for the purposes of uninsured motorist coverage. . . . In *Stevens*, 345 So.2d at 1043, we recognized that this statute creates two distinct classes of insureds. The first class consists of the named insured, and

while residents of the same household, his spouse and relatives of either. The coverage to this class of insureds extends to those situations "while in a motor vehicle or otherwise."

The second class of insureds consists of "any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies." The record clearly indicates that Larry was in this latter class and this assignment is without merit.

*Harris v. Magee*, 573 So.2d 646, 656 (Miss. 1990). *See also [Box v. State Farm Mut. Auto. Ins. Co.](), 692 So.2d 54, 58 (Miss. 1997) ("Box, as a passenger in one of the Williamses' cars, and not a member of the Williams household nor a named insured, did not meet the definition of an insured under the State Farm policies issued to the Williams family covering the vehicles not involved in the accident in question."). The dissent's assertion that the statute and case law reveal there is no basis for insured classification is simply not correct. *See [Mississippi Farm Bureau Cas. Ins. Co. v. Curtis](), 678 So.2d 983, 988 (Miss. 1996) (Section 83-11-103(b) distinguishes two categories of insured: Class 1: The named insured and, while resident of the same household, the named insured's spouse and relatives of either, while in a motor vehicle or otherwise. Class 2: A guest passenger in such motor vehicles to which the policy applies."); *Meadows v. Mississippi Farm Bureau Ins. Co.*, 634 So.2d 108, 111 (Miss. 1994) ("Meadows and Jetton are Class 2 'insureds' limited to the uninsured motorist coverage on the 1972 Chevrolet truck in which they were passengers at the time of the automobile collision with the uninsured motorist."); *Miller v. Allstate Ins. Co.*, 631 So.2d 789, 795 (Miss. 1994) ("The operative Allstate UM coverage language is not contrary to the Mississippi Uninsured Motorist Act. In this policy, coverage for Class 1 insureds, the policyholder and all resident relatives, is not restricted to any particular vehicle. However, the coverage for Class 2 insureds is restricted to the 'insured auto.' This is a limitation which is consistent with Mississippi Supreme Court precedent."); *Mississippi Farm Bureau Cas. Ins. Co. v. Curtis*, 678 So.2d 983, 988 (Miss. 1996) ("Section 83-11-103(b) distinguishes two categories of insured: Class 1: The named insured and, while resident of the same household, the named insured's spouse and relatives of either, while in a motor vehicle or otherwise. Class 2: A guest passenger in such motor vehicles to which the policy applies.").

¶14. In the case sub judice, we have Class II employees attempting to stack the UM coverage of their employer's three vehicles that were insured on three separate policies. While it is true that in all the cases cited by Glennon and Lashley this Court did not deny stacking to a Class II employee, it is also true that in all the cases cited the UM coverages being stacked were all contained in one policy. Further, it is also true that this Court has never permitted a Class II insured, employee or otherwise, to stack the UM coverage of separate policies covering vehicles they were not occupying at the time of the accident, and this Court declines to do so today. Therefore, this issue is without merit.

## II. IS A PERMISSIVE USER CONSIDERED A CLASS I INSURED GIVING HIM THE RIGHT TO STACK?

¶15. Glennon and Lashley alternatively contend that their status as employees should entitle them to Class I status for UM coverage. In a recent case, this Court stated that the owner of a closely held corporation is not a Class I insured where only the corporation is listed as the named insured on the insurance policy. *[Steinwinder v. Aetna Cas. & Sur. Co.](), 742 So.2d 1150, 1153 (Miss. 1999). In *Harris v. Magee*, a case relied upon by the dissent, this Court had previously resolved this issue. The employee[2] in *Harris* had contended that he was a "named insured" and therefore, for purposes of UM coverage, a Class I insured. *Harris*, 573 So.2d at 656. This Court rejected that argument stating that a Class II insured is "any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which

the policy applies." *Id.* Since the employee was not named on the policy, he was a Class II insured. *Id.*

¶16. In the case sub judice, neither Glennon nor Lashley is a named insured on any of Rent-A-Maid's insurance policies, thus they can only be considered Class II insureds. Therefore this issue is without merit.

## CONCLUSION

¶17. The circuit court did not err in affirming the county court's grant of summary judgment to State Farm. Glennon and Lashley are Class II insureds who are not permitted to stack UM coverage of separate policies for vehicles they were not occupying at the time of the accident. Thus, we affirm the judgment of the circuit court.

¶18. **AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., WALLER AND CARLSON, JJ., CONCUR. DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J., EASLEY AND GRAVES, JJ.**

**DIAZ, JUSTICE, DISSENTING:**

¶19. With respect for my colleagues in the majority, I dissent believing that Jayne Glennon and Marilyn B. Lashley should be allowed to stack UM coverage of separate policies held by their employer.

¶20. The majority finds that Glennon and Lashley are not entitled to stack coverage because they suffer a Class II status and other vehicles owned by the employer are covered under separate policies.

¶21. First of all, Class distinctions are not provided for under the UM statute. As pointed out in *Wickline v. United States Fid. & Guar. Co.*, 530 So. 2d 708, 714 (Miss. 1988), Miss. Code Ann. § 83-11-103(b) (1999) defines "insured" as "a guest in such motor vehicle to which the policy applies, or the personal representative of [such guest]." *Wickline* went on to hold that a guest passenger may aggregate UM policies of all cars owned by the insured despite the fact that separate premiums were paid on each car. *Id*.

¶22. In *Cossitt v. Nationwide Mut. Ins. Co.*, 551 So. 2d 879 (Miss. 1989), this Court more definitely held that Class status is irrelevant when determining UM coverage by finding that church employees injured by a church bus were entitled to stack the UM coverage on all three of the church's buses.

¶23. Due to the fact that Class distinctions are inapplicable in the UM arena, the only obstacle preventing Glennon and Lashley's from being compensated for their injuries is our previous finding that UM coverage provided in separate policies to the same insured cannot be stacked. I believe *State Farm Mut. Auto. Ins. Co. v. Nester*, 459 So. 2d 787, 793 (Miss. 1984), *overruled on other grounds, Burns v. Burns*, 518 So. 2d 1205 (Miss. 1988), provides an answer to this impediment. In *Nester*, the injured party was riding as a passenger in her car, which was insured by a policy held by her father. Her father also had three other policies on three other cars. The Court held that the daughter could stack the UM coverage on all four policies. 459 So. 2d at 793.

¶24. It is here that I must relate the strength of my disagreement with the majority's holding. Stacking is so firmly imbedded in Mississippi uninsured motorist law that it "has become a positive gloss upon the

Uninsured Motorist Act." *Wickline*, 530 So.2d at 714. In *United States Fid.& Guar. Co. v. Ferguson*, 698 So.2d 77, 79 (Miss. 1997), the Court reduced its attitude toward the stacking issue as follows:

> In previous cases before this Court, we have allowed aggregation of UM coverage despite anti-stacking clauses based upon ambiguity in the language of the policy or the fact that separate premiums were charged for each car. Insurance companies have responded by rewriting their policy language and altering their premium scheme in order to circumvent our decisions. We now affirmatively declare that the public policy of this State mandates stacking of UM coverage for every vehicle covered under a policy, regardless of the number or amount of the premium(s) paid for UM coverage. We hereby hold that anti-stacking clauses as applied to UM coverage are against public policy, and contracts contrary to public policy are unenforceable.

It stands to reason that insurance companies will now or have already begun to disallow policies that cover more than a single vehicle. This not only circumvents our holdings in the past, but also the purpose of the UM statute. The only enduring aspect of Mississippi's UM law is that the "statute is to be liberally construed so as to achieve compensation." *Harris v. Magee*, 573 So.2d 646, 655 (Miss. 1990).

¶25. Because Class status is irrelevant to the issue of UM coverage, we have previously held that separate policies may be stacked, and to disallow coverage is against public policy. I would reverse.

**McRAE, P.J., EASLEY AND GRAVES, JJ., JOIN THIS OPINION.**

1. Plaintiff's uninsured motorist coverage ($10,000) + Rent-A-Maid coverage for the vehicle in which they were traveling ($25,000) - the liability coverage of Casey York ($25,000) = $10,000.

2. The employee in *Harris* was deceased, and his beneficiary, his wife Linda, cross-appealed claiming that her late husband was a Class I insured by virtue of his employee status.